Walker *v.* Crain.

17b 119
42ap505

This was an appeal by the plaintiff from a judgment entered against him for costs, upon the report of a referee. The com-

(*a*) See next case.

plaint, after alleging that the Bank of Utica was a corporation under the general banking law, and that the plaintiff was its president, stated that the Astorogan Company was incorporated in 1844, under the act for incorporating manufacturing companies, passed in 1811, and that its place of business was at Little Falls, in the county of Herkimer; that it continued to be a corporation until some time in April, 1852, when it was dissolved. It then set forth a liability of the Astorogan Company upon two bills of exchange, drawn by that company in December, 1851, on a person in New-York, at three months, which were discounted by the Bank of Utica, and were at maturity protested for non-payment, and that the drawers were duly charged, the amount being six hundred dollars and interest. It further alleged, that the defendant was a member of the Astorogan Company, at the time of its dissolution, being a stockholder, in the amount of six hundred dollars. The answer admitted the incorporation of the Astorogan Company, but denied that it was dissolved, as alleged in the complaint. It alleged that the defendant was ignorant of the facts respecting the indebtedness upon the bills of exchange. The defendant admitted that he was a stockholder in the Astorogan Company at the time it was stated to have been dissolved, for $450 of the stock, and alleged that he did not own a greater amount. The defendant then set up the act of 16th of April, 1852, entitled, "an act to facilitate the dissolution of manufacturing corporations in the county of Herkimer, and to secure the payment of their debts without preference;"(a) and that pursuant to its provisions the trustees of the Astorogan Company, having become satis-

(a) The first section of that act is as follows:

" § 1. Whenever the trustees of any manufacturing company in the county of Herkimer, incorporated under the law passed March twenty-second, eighteen hundred and eleven, entitled, 'An act relative to incorporations for manufacturing purposes,' shall become satisfied that the property and convertible assets of the corporation, over and above its capital stock, are insufficient to pay its just debts, and that the business for which it was incorporated cannot be longer carried on without loss to the stockholders or creditors, they may by resolution declare the same, and thereupon the corporation shall become dissolved, and all the property and rights in action of the corporation, *includ-*

fied of the facts referred to in the act, on the 22d April, 1852, passed a resolution declaring the company dissolved, and caused it to be published and served, according to the act; that the corporation was then largely indebted to divers persons to an amount exceeding its property, stock and means, including the liability of its stockholders for corporation debts, and that the trustees had entered upon the execution of the duties devolved upon them by the act. The defendant also set up that he was a creditor of the corporation at the time of its dissolution, and claimed that the act, and the proceedings under it, were a bar to the action.

The cause was referred to H. Denio, Esq. as sole referee.. On the trial before him it was admitted that the Bank of Utica was a banking corporation, as alleged, and that Mr. Walker, the plaintiff, was the president; and it was shown by a reference to the pleadings, that the Astorogan Company was a corporation under the general manufacturing corporation act of 1811. The drafts were given in evidence, and their acceptance and dishonor were admitted. It was proved that the defendant was a stockholder to the amount of $600. The act of the legislature, and the resolutions of dissolution, not being controverted, were considered as admitted. The referee found that at the time of the adoption of the resolutions, the Astorogan Company was, and still is indebted to divers persons, to an amount exceeding the amount of the property, stock, and means of the said corporation, including the liability of the stockholders for corporation debts, or such thereof as were collectable, and that there was not sufficient property, assets and personal liabilities that could be collected to pay and discharge its debts, and that said trustees had proceeded with all reasonable diligence to close the business of said corporation, and to do all the acts and things provided for them to do in said law. That the Astorogan Company, after the passage of the resolutions, discontinued its business, and that at the time of the commencement of this action, the said cor-

*ing any liability of stockholders for unpaid stock, or for the corporation debts,* shall thenceforth be deemed the property of the creditors, to the extent of their debts, in equal ratio according to their debts respectively."

poration had become so far divested of its property, that the plaintiff could have maintained this action, on the ground of a dissolution subsequent to the passage of said resolutions, under the 7th section of the act of 1811 ; and he found, as matter of law, that the act of April, 1852, and the resolutions and proceedings of the trustees in pursuance thereof, and the facts set up as a defense, and admitted by the pleadings, prevented a recovery in this action by the plaintiff, and he therefore reported that the defendant was entitled to judgment for costs.

*M. H. Throop,* for the appellant.

*H. C. Goodwin,* for the respondent.

*By the Court,* GRIDLEY, J.   Two questions only have been argued to any considerable extent, upon the appeal in this cause.   *First :*  Whether the act of April 16, 1852, "to facilitate the dissolution of manufacturing corporations in the county of Herkimer, and to secure the payment of their debts without preferences,"(b) vests in the trustees the debts due to the creditors from stockholders, pursuant to one of the provisions of the act of 1811, relative to manufacturing corporations. *Secondly :*  Whether the first mentioned act be unconstitutional, for the reason that it impairs the obligation of contracts.

I. "The act to facilitate the dissolution of manufacturing corporations in the county of Herkimer," was manifestly designed by the legislature to save the expense and delay incident to proceedings at law in the dissolution and winding up of insolvent corporations ; and also, to give the same remedy to creditors of those institutions which would be granted by a court of equity.   Both of these objects are clearly shown by the very title of the act, and are equally apparent on the face of the statute.   In many of its provisions the act in question bears a close analogy to the act entitled "of the voluntary dissolution of corporations," especially to that part of it which

(b) Laws of 1852, p. 572.

Walker *v.* Crain.

relates to the appointment and the duties of receivers of such corporations. (*See* 2 *R. S.* 711 *to* 714, *4th ed.*) This latter act, however, does not undertake "to secure the payment of the debts due from such corporations, *without preferences*," and it contains nothing in its title and nothing on its face that indicates such an intent: on the contrary, it vests the receiver with "all the estate, real and personal, of such corporation;" but it does not interfere with the rights of creditors under the seventh section of the act of 1811. (*See* 2 *R. S. 4th ed.* 711, § 77, [67].) It authorizes them to bring actions for arrears of unpaid stock, against the stockholders, but it does not attempt to clothe them with authority to collect, in addition to arrears of stock, what may be due from such stockholders, as a liability for the corporation's debts. (*Sec.* 79, [69].) The reason for this distinction is apparent; it was not the intention of the act to vest in the receivers any thing but the *property of the corporation, strictly speaking*. The *liability* for corporation debts belonged to creditors, and not to the corporations. In truth, the receiver of the property of a manufacturing corporation could not take (except by an enactment containing words which fairly conferred them,) the rights of creditors under the seventh section of the act of 1811. (c) The language of that section is as follows: "And that for all debts which shall be due and owing by the company at the time of its dissolution, the persons then composing such company shall be individually responsible to the extent of their respective shares of stock in said company, and no further." Now this liability never belonged to the company in any legal sense; it was strictly the property of the creditors; it *accrued only* on the event of the dissolution of the corporation. Its existence depended on the contingency of the corporation being unable to pay the creditors out of the assets of the company, and that inability determined by a dissolution of the corporation. It sprang into being *eo instanti*, with the dissolution of the corporation. It did not *co-exist* with it for a single instant of time. The cor-

(c) 1 R. S. 4th ed. 1211.

poration, therefore, could never enforce this liability by action. But the act of 1852 embraced a more comprehensive object. Its declared intent was "to secure the payment of the corporation debts *without preferences.*" That intent could not be carried out while the stockholder was at liberty to pay up the full amount of his liability under the act of 1811, and thus discharge himself; or while the creditor might bring his action at law and recover his entire debt, as he could do, before the act of 1852 was passed. (*Ibbotson* v. *Bank of Poughkeepsie*, 24 *Wend.* 479; 4 *Barb.* 118.) The object of the enactment of 1852 was, as appears on its face, to prevent a creditor from obtaining an advantage by an early judgment, procured either by his greater diligence or through the favoritism of the officers of the corporation, and also to take away the right of a creditor to sue the stockholder, on his liability for the debts of the corporation. It was the intention of the statute to apply the great principle of the court of chancery, that equality is equity, to the whole class of insolvent manufacturing corporations in the county of Herkimer. It was achieving in a summary way precisely what the court of chancery would always do, and giving precisely that relief which that court would always give, when its jurisdiction was invoked in due season. I have said that this object is apparent in the title of the act. It is inscribed there in terms as clear and intelligible as the English language can express it. It is just as clear upon the face of the act, making the title and the provisions in the body of the act, entirely harmonious and consistent with each other. The first section of the act of 1852 provides that whenever the trustees of any manufacturing company, incorporated under the act of 1811, shall become satisfied that the property, &c. of the corporation is insufficient to pay its just debts, &c. they may by resolution declare the same; and "*thereupon* the corporation shall become dissolved; and all the property and rights in action of the corporation, including any liability of stockholders for unpaid stock, or for the corporation debts, shall thenceforth be deemed the *property of the creditors to the extent of their debts, in equal ratio, according to their debts, respectively.*" We have already seen that

Walker v. Crain.

the persons composing the company at the time of its dissolution, are by the act of 1811, made liable for *the corporation debt individually*, to the extent of their respective shares of stock, and no further. (1 *R. S.* 147, §. 7.) This then, is the liability for corporation debts, defined by the act of 1811, and specified in a manner and by language too clear to be mistaken, in the act of 1852, as a portion of the fund which was declared to belong to the creditors. The principal part of that fund was described in the act as "*all the property and rights in action of the corporation;*" and then, as if to include a fund that would not otherwise be embraced in the description already given, the legislature specify the liability of stockholders for unpaid stock and corporation debts. This latter liability is not mentioned in the act concerning the voluntary dissolution of corporations, (2 *R. S. 4th ed.* 1711, 714,) as being vested in the receiver, whereas that officer is specially empowered to sue for and collect all arrears of subscriptions for stock. (§79 [69].) The omission of this peculiar liability of the stockholders for the corporation debts, in the last mentioned act, and its insertion in the act of 1852, is very significant, when we reflect that it could not belong to the receiver, on the hypothesis that he only took what was strictly the property of the corporation, and that it *must* belong to the trustees in order to be in harmony with the title and the general object of the act of 1852. The argument derived from this source is greatly increased in strength when we consider that such is the similarity of many of the provisions of the two acts as to make it morally certain that the individual who drafted the act of 1852 had the other act before him, and copied out such of the provisions as were within the scope and intent of the act of 1852. Why then did he insert this liability of the stockholders for the corporation debts, except to make the act express what we have declared to be its general intent and object? And why did the act of 1852 declare that all these funds "should from thenceforth be deemed the *property of the creditors* to the extent of their debts, in equal ratio, according to their debts, respectively?" The receiver, under the provisions of the revised statutes, was the rep-

resentative of the corporation, and took only such property as in strictness belonged to the corporation; while the trustees, under the act of 1852, represented not only the corporation but its creditors, and took not only the property of the corporation but that of the creditors also. In order to accomplish the design of the act, in devoting the whole property to the creditors "in equal ratio according to their debts respectively," it was indispensable that the personal liability of the stockholders, under the act of 1811, should be a part of the fund subjected to the control of the trustees. It was a large fund, equal in amount to the entire capital stock of the company, and could not have been overlooked by the individual who drafted the law, nor by the legislature which passed it, without supposing them to be guilty of the most culpable negligence. We now perceive the reason why this personal liability of the stockholders would be introduced into the act of 1852, notwithstanding its omission in that relating to the receivers of voluntary corporations. Its introduction was intentional. The individual who drafted the act did not find this fund specified in the act relating to receivers; for, the plain reason that it belonged to the creditors and not to the corporation. But in the act which he was framing, the scope and object of the law were to be more comprehensive. It was to specify the items of a fund, *all of which* was to be declared to be the *property of the creditors ;* and therefore, nothing could be more proper than to include an item which had been expressly provided for the creditors in the act of 1811. Again, the intent of the act was to devote this entire fund to the payment of the debts of the creditors *without preferences,* so that they should be paid in equal ratio, according to their debts respectively ; and it was seen that this object could not be accomplished, while a fund equal in amount to the capital stock of the corporation was withheld from the operation of this principle. It was for these reasons, therefore, that the act of 1852 was framed, so as to embrace this personal liability of the stockholders. Had the legislature omitted to insert this provision, the act would have failed in its main and principal object, which was to apply the great and salutary rule

of the court of chancery, that "equality is equity," to the creditors of those insolvent corporations. When, therefore, we consider that there is *no other* "LIABILITY OF STOCKHOLDERS" for corporation debts than this one under the seventh section of the act of 1811, and that the ordinary debts due from stockholders to the corporation had already been embraced by the words "rights in action of the corporation;" that the words used are apt and fit to describe this personal liability; that to regard them as intended to express and describe this personal liability is in harmony with the great object of the statute, there seems to be no good reason for doubting that this is the true interpretation of that clause in the act.

The third section of the act declares the duties of the trustees; and by a necessary implication vests the title to the entire fund in them. They are directed with all reasonable diligence "to close the business; dispose of the property; collect all debts and liabilities, assess deficiences, if necessary, upon stockholders to the extent of their liability, and collect the same; pay the debts of the company in equal ratio, and make distribution of any surplus among the stockholders," &c. The clause directing the assessment of *deficiencies, if necessary,* upon the stockholders to the extent of their liability, is supposed by the counsel of the plaintiff to refer to the liability of the stockholders for unpaid stock. This construction, however, is not warranted by any just rule of interpretation. First. The words "*assess deficiencies*" would be a very awkward expression, when applied to subscriptions for stock. There would ordinarily be no *assessment*, but a suit would be brought for the whole of the unpaid stock. In truth the whole of the stock should be collected in at first. Its capital stock is the fund with which the corporation commences business, and on which the creditor who deals with the company mainly relies. By the first section of the act, the trustees must be satisfied that the assets of the company, over and above its capital stock, are insufficient to pay its debts, before they are at liberty to declare the corporation dissolved. The stock must all be paid in or collected. This was one of the first duties enjoined on the receiver of an insolvent

corporation by the statute. (2 *R. S.* 711, § 79, [69, *4th ed.*] *See also Shepard* v. *Cushman*, 4 *Barb.* 119, *and cases there cited.*) Therefore, the injunction to assess deficiences, *if necessary, to the extent of the liability of the stockholders*, is absurd, when applied to an insolvent corporation : because the resolution declaring its dissolution can only be passed on the hypothesis that it is *necessary;* and when the very idea of insolvency presupposes the necessary exhaustion of the entire capital stock. *Secondly.* The phrase "assess deficiences, if necessary, upon stockholders, to the extent of their liability," is almost identical with the words employed in the seventh section of the act of 1811, to describe the liability to creditors, now under consideration. *Thirdly.* The direction to "assess deficiences," occurs precisely in the order of time, when it should, if the construction we have adopted be the true one. By the previous clauses of the third section the trustees are directed to collect all debts and liabilities due to the corporation, and to dispose of its property, and close the business. This should all be done before the stockholders are required to advance any thing upon this personal liability requirement ; and then they should be required to pay upon it no more than may be necessary to satisfy the debts due to the creditors of the company. And again, in obedience to the rule in chancery, they should pay, *in equal ratio*, to the amount of stock held by them respectively ; as much as is *necessary* to satisfy the creditor, up to the extent of their liability ; in other words, to the extent of the shares of stock which they hold, at the dissolution of the corporation. These considerations are conclusive with us, as to the true construction of this act. It is true that the act is not drawn with a great degree of perspicuity or precision ; but the reasons in favor of the interpretation we have felt bound to give to it, seem to us to place the questions beyond any reasonable doubt.

II. The next question we propose to examine is, whether the act of 1852 violates that provision of the constitution which prohibits the passage of any law that impairs the obligation of contracts. The principle to be maintained by the party who holds the affirmative of this proposition is, that the obligation imposed

Walker v. Crain.

on the stockholder by the seventh section of the act of 1811, is *founded on contract.* We do not here speak of the original obligation of the corporation to the creditor; for that springs directly out of a contract. If the obligation was upon those persons who were members of the company when the corporation contracted the debt; and if the obligation was to pay the whole amount of the debt, there would be more propriety in saying that the stockholders might be considered as parties to the contract, when it was made; in the light of sureties or guarantors of the corporation; such was the case in *Corning* v. *Mc Cullough,* (1 *Comst.* 47.) But even in that case, it is not said that the obligation is founded on contract, in any sense, except to avoid the statute of limitations against penalties and forfeitures. The opinion holds that a declaration might be framed on the obligation, setting out the facts, as in a special action on the case. It does not assert, however, that an action of assumpsit would lie against the defendants upon the obligation, even in that case. It was only by a remote analogy that it bore any relation to a contract. But in the case under consideration the provision of the statute, the obligation of the stockholders; and the rights of the creditors, are altogether different. The stockholder cannot be said to stand in the relation of surety or guarantor of the contract which the creditor made with the corporation, for two reasons; (1.) the obligation does not rest upon those who were members of the company when the debt was contracted; but on those who were members when the corporation was dissolved; (2.) the obligation is not commensurate with the debt of the creditor; but it is limited by the extent of the shareholder's interest in the capital stock. So that the contract that is impaired is, in no sense, the contract of the creditor with the corporation. It is not similar to that in any of its features. The parties, the date, the amount, the nature of the obligation and the foundation on which it rests are all different. Even the "*debt*" against the corporation may be a judgment sounding in tort; but yet the stockholder is under the same obligation to pay it, to the extent of his liability, that he would be if it had rested in con-

tract. To every contract there must be two parties capable of contract. Here, one of the parties must be the stockholder, who is such at the moment of dissolution. The other, is the creditor who happens to own the demand against the corporation at the same moment. The one may have bought the demand and the other the stock, an hour before, and the obligation to pay is wholly irrespective of the amount of the creditor's demand, or of the nature of it, whether it be an open contract or a judgment for a tort. The contract then (if any there be,) must be entirely independent of the original debt of the corporation. It must be a contract precisely in the words which the statute has carved out. Now then can that obligation be a contract within the meaning of the constitution? It is not binding on the party *because* he has *contracted* or *agreed* to pay; but because the *statute has enjoined it upon him as a duty.* It is true that in an enlarged sense, every citizen, when he enters into the social compact that lies at the foundation of every political society, agrees to obey the laws; and in that sense the obligation to pay a penalty, or to suffer a punishment prescribed by an act of the legislature, may be said to be founded on contract; but it is needless to say that such is not the interpretation of the word "contract," as used in the constitution. That instrument refers to the obligation on parties founded on their practical agreement, to do, or not to do, a particular thing, and not on a mere theoretical contract. Now, under this view of the nature of the obligation, it seems to us a great stretch of construction to say, that the obligation on the stockholder is founded on a contract. It appears, on the contrary, to spring from, and to rest upon, the enactment of the statute solely. It is a *duty*, because the *statute has enjoined it*, and not because the parties have entered into a contract to perform it. Judge Story says, (1 *Mason,* 243,) "Whatever is enjoined by a statute to be done creates a *duty* on the party, which he is bound to perform. When, therefore, a statute declares that a stockholder in a bank shall pay the debt due from the bank under certain circumstances, and those circumstances occur, it *creates* a *direct* and *immediate obligation* to pay it." So, it seems to us, that it is the *statute*

Walker v. Crain.

and not a *contract*, which creates the obligation in the present case.

But we do not decide this question; nor is our decision placed on this ground. It is not necessary; for there can be no just pretense that the act of 1852 either *impairs* or even *changes* the obligation of the stockholder under the seventh section of the act of 1811. That obligation is not to pay *one creditor*, to the exclusion of the rest; nor to pay any creditor the amount of his debt, absolutely. It is to devote a *particular fund*, (viz.) an amount equal to the stockholder's share of stock, to the payment of "*all the debts due and owing by the company* at the time of its dissolution." No single creditor has a vested right to be paid his debt in preference to any others. It is true that one creditor may sue for his debt in an action at law, and get a judgment; but that is because, either there is no other creditor, or no other who is disposed to take any action to arrest his suit; or that a court of law does not allow the making of the proper parties to raise the question and adjust the fund between those who are entitled to it. But suppose two creditors bring separate suits against a stockholder, each for an amount equal to his capital stock; he may file a bill of interpleader, or any other creditor may successfully invoke the jurisdiction of chancery, to stay all proceedings at law, and have the entire fund distributed pro rata, in accordance with the true spirit of the act. (*See 4th Barb.* 118, 390, 393; *8th Cowen,* 387; *Hopk.* 305; 10 *Paige,* 592; 24 *Wend.* 479; 19 *John.* 450, 472.) What we desire to say is, that the construction the court of chancery gives to the obligation prescribed in the act of 1811, is the *true construction ;* it declares and adjusts the liability precisely according to the statute, by devoting the fund to the payment of "*all the debts due from the corporation,*" &c. in obedience to the express injunction of the statute itself. And the court of chancery will control the actions of a court of law, (which from its organization can only decide between two parties,) whenever its jurisdiction is properly invoked, and it may always be invoked when there is any other party, who is interested in the fund; and whose rights are endangered by the suit at

law: Now, it is presumed that the act of 1852 proposes to do in a summary way, precisely what the court of chancery would always do, when its power was invoked; and that, instead of imposing the obligation that rests on the stockholders, it enforces it, in precisely the manner, to accomplish the object manifest on the face of the statute. This is all we deem it necessary to say on this subject; and as no other questions were argued before us, we feel bound to declare our opinion to be in favor of affirming the judgment.

[ONONDAGA GENERAL TERM, October 3, 1853. *Gridley, W. F. Allen, Hubbard* and *Pratt,* Justices.]

