[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 216 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 217 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 218 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 219 
In the discussion of this case here, the argument to sustain the reversal of the judgment rendered by the referee, was chiefly directed to the establishment of two fundamental propositions. All the questions raised on the motion for a nonsuit, before the referee, and upon the exceptions to his finding and report, depend upon or are involved in these two leading propositions:
1. That the act of April 16, 1852, providing for the dissolution of manufacturing corporations in Herkimer County, is in violation of that part of the Constitution of the United States which provides that, "No State shall pass any law impairing the obligations of contracts."
2. That the resolution of the 27th of April, 1852, purporting to dissolve the corporation, was not duly passed by a majority of the trustees of the corporation, at a regular or lawful meeting of said trustees, and was therefore void.
The plaintiff sues as receiver, and it is supposed and assumed to be essential to his title to maintain this action, to establish both of these propositions. If the act of April 16, 1852, is valid, upon this assumption, it was not properly executed by the persons claiming to be trustees, in the passage of the resolutions of the 27th of April, and the action cannot be maintained.
The plaintiff, it is true, was appointed receiver in an action commenced by the Herkimer County Bank against the Wool Growers' Manufacturing Company after the return of an execution unsatisfied, issued upon judgments duly recovered by said bank against said company. The Supreme Court in such case, under the provisions of article 2, chapter 8, of the 3d *Page 220 
part of the Revised Statutes, entitled "Of Proceedings against Corporations in Equity," was authorized to sequestrate the stock, property, things in action and effects of the corporations, and to appoint a receiver of the same. Such receivership, by the terms of the statute, would be necessarily limited to the property and effects of the corporation.
This clearly would not include the personal liability of the stockholders for the payment of the corporate debts after the corporate effects are exhausted; for such liability clearly cannot be deemed the property of the corporation. This action is brought to enforce the personal liability of the stockholders of the Wool Growers' Manufacturing Company, under the 7th section of the general manufacturing act of 1811 (3 R.S., 1st ed., p. 311), which provides as follows; that "for all debts which shall be due and owing by the company at the time of its dissolution, the persons composing such company shall be individually responsible to the extent of their respective shares of stock in said company."
This act of April 16, 1852, in question, is obviously supplemental to the provisions of the Revised Statutes relating to the powers of receivers of insolvent corporations, and if it is a valid law and has been duly executed in the proceedings of the trustees to dissolve said corporation, the plaintiff is clearly vested with authority to enforce the personal-liability provision of the 11th section in the act of 1811, aforesaid, as against the stockholders of the said corporation, existing at the time of such dissolution.
It is therefore considered essential to the plaintiff's title to maintain this action, that we should affirm the constitutionality of the said act of April 16, 1852, and this is the first question that meets us in limine in the examination of this case.
We come then to the inquiry whether the act in question is not in conflict with that portion of the Constitution of the United States, which forbids the states to pass any laws impairing the obligation of contracts.
It is objected that the liability imposed upon the stockholders of manufacturing companies under the 7th section of *Page 221 
the act of 1811, for the incorporation of companies for manufacturing purposes, is not an obligation or contract within the intent and meaning of the Constitution. This view of the statute was taken by the learned judge who gave the opinion of the Supreme Court, in Walker v. Crain (17 Barb.), which was a case under this statute of April 16, 1852, and involved the precise questions presented to us upon this appeal.
But I think this view cannot be maintained. This statute of 1811, as was justly held by Judge SPENCER, in Slee v. Bloom
(19 Johns., 473), and Chancellor SANFORD in Penniman v.Briggs (Hopk., 300), was designed to authorize, in effect, the formation of partnerships without the risks ordinarily attending them, to encourage internal manufactures.
The legislature authorized the association of individuals to organize in the form and by the name of a corporation, that it transact its business, sue and be sued by a single name, and might have succession, notwithstanding a change in its stockholders. The partnership liability of the common law was modified only so far as was necessary to effectuate these objects. The partnership liability of all the associates for all the debts of the company was restricted to an amount equal to the share of each associate in the stock, and as such stock was made personal property and transferable as such, the personal liability which would attach to partners upon the contraction of any debts for the benefit of the copartnership, was made to follow and attend the transfer of stock to any assignee, so that each stockholder shall be liable upon the dissolution of the corporation for an amount equal to his stock, for the payment of the debts of the company.
This obligation was assumed by every purchaser of stock upon any transfer from the original corporator, and followed the stock as incident to its ownership. Each new stockholder, by assignment, was to assume the liability of the original partners. He became an assignee of the stock by transfer, with all the liability which attached to it. So far the partnership liability of the common law was modified, but otherwise it remains. *Page 222 
The act is unlike that of the Rossie Galena Company, of 1837, which has furnished much litigation for the courts, in this, that by that act the stockholders are made jointly and severally liable for the payment of all the debts of the corporation. Under this act it was held in this court in Corning Horner v.McCulloch (1 Comst., 47), that the stockholders were liable as partners in unincorporated companies, that is, they are liable as principal debtors.
But the liability in this case as much as in that, according to the doctrine of that case, I conceive is the common law liability of retired partners, except as expressly modified by the act. By force of the act one partner may retire and new partners come in, assuming their liability, and this was one of the chief designs of the act. The legislature clearly intended to modify the common law, in this manner and to this effect, in authorizing such associations. The persons becoming members of the corporation by original subscription to it or subsequent transfer of its stock must be deemed to assent to its terms, and all persons dealing with the company must be deemed also to do so with knowledge of the rights and liabilities of the stockholders. Every person dealing with one of these manufacturing companies, organized under the act of 1811, must also be held to trust to the personal liability of its stockholders to the extent specified in the act of its incorporation, and such liability is part of the contract. The personal liability of the stockholders for the payment of the debts of the company to the extent specified in the charter, as was held in this court in the case of Corning v. McCulloch,
"was one of the terms of purchase authorized by the statutes." It became and was one of the terms of the sale to the company of any property, and constituted part of the security of the creditor for any debt contracted by the said company.
This doctrine that the common law of partnerships remains and applies in respect to all this class of corporations where a personal liability of the stockholders is retained to any extent, except as modified in the particular act, must be deemed, I think, the settled law of this State on this subject, since *Page 223 
the decision of Corning v. McCulloch. The statute liability is part of the obligation of the contract and is under the protection of section 70 of article 1 of the Constitution of the United States. Such, I think, is the received opinion at the present day. (Conant v. Van Schaack, 24 Barb., 96; 7 id., 279; 26 id., 664.)
Assuming this statute liability therefore to be part of the obligation of the contract, the inquiry remains, does the act of April 16, 1852, impair such obligation?
The obligation of the contract consists in the agreement or duty of the stockholder under this act to pay to the creditors of the corporation upon its dissolution an amount sufficient to pay its debts to the extent of the respective shares of each stockholder in the said company.
This is the contract of the stockholders, and this is its obligation.
This statute does not in any way take away or release or discharge their liability. It in no way acts upon the contract itself. It does not profess or propose to do so. On the contrary it clearly recognizes the binding force of the statute liability. It treats it as a subsisting and valid obligation.
But it is claimed that it impairs the face of the obligation by acting upon the remedy.
A distinction was early made in the United States Courts, whose decision upon questions of constitutional law under the United States Constitution are of paramount authority, and in all courts, between statutes which operate upon the contract and those which affect the remedy.
The lawfulness of acts of the latter description is generally conceded, so far as they fairly operate merely upon the remedy. Chief Justice TANEY, in Remsen v. Kinzie (1 How. U.S., 316), states the rule as follows: "Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract." Although a new remedy may be deemed less convenient than the old, and may in some degree render the recovery of debts more tardy and difficult, yet it will not follow that the law is unconstitutional. This quotation, *Page 224 
it seems to me, answers all the objections to the act of 1852, so far as they related to the remedy.
The objections to this act under this head are, first, that it takes from the creditor the cause of action against the stockholders which the statute of 1811 gave him, and transfers it to a trustee under different circumstances from those under which the Court of Chancery would previously have interfered with his enforcing it.
And, second, because the statutory trustee is first directed to resort to another fund as the primary fund for the collection of the demand, and to suspend the collection from the stockholder until the primary fund is exhausted.
The act of 1811 contains no provision relating to the remedy for the enforcement of the liability of the stockholder under the 7th section. The creditor was, therefore, necessarily left to the ordinary remedies afforded by the courts according to the laws and practice then existing.
It was held in accordance with this view that the creditor had two remedies to enforce this statutory liability. One, by action at law against any single stockholder. (Bank of Poughkeepsie v.Ibbotson, 24 Wend., 473; S.C., 5 Hill, 461.) Or second, by bill in equity against all the stockholders to recover from each his proportionate share of the amount necessary to discharge the debt. (Slee v. Bloom, supra; Penniman v. Briggs, id.;Cushman v. Shepard, 8 Barb., 113.)
But it was held by the court of equity that this stockholder's liability constituted a fund for the payment of all the corporate debts after its assets were exhausted, and if it was insufficient to pay all the debts, it must be distributed among the creditors upon equitable principles, and that as equality was equity, no single creditor would be allowed to acquire priority of, or exclusive payment, and that the court of equity would therefore restrain any single creditor for prosecuting at law and require the fund to be distributed ratably among the creditors in equity.
This is the precise result sought to be accomplished by the act of 1852 in question, and it harmonizes completely with *Page 225 
remedy of the party in equity, and instead of postponing the time of performance, it seems to me that the rights of creditors to payment are advanced and expedited by the act. By the act of 1811, the liability of the stockholder could not be enforced till after the dissolution of the corporation, for he was only liable for the debts existing at the time of the dissolution. What should constitute a dissolution of the corporation so as to give the creditors his remedy against the individual stockholder, was a question much litigated. It was held, finally, in Slee v.Bloom, and Penniman v. Briggs (supra), that when the corporation ceased to act, and suffered acts to be done, which destroyed the end and object for which it was organized, it was equivalent to a surrender of its rights. Judge NELSON (24 Wend., 479), states the rule thus: "That a corporation, having ceased to act, and being without funds, and indebted, is to be deemed dissolved, so far as to give the remedy to the creditor." Before the corporation could be deemed dissolved, therefore, so as to give the creditor his remedy, under the act of 1811, independent of legislation since, the corporation must not only have ceased to act, but its property must be disposed of, and its power to further carry on its business determined.
In an action against a stockholder, it was necessary for the creditor to establish the fact of such dissolution. This, in many cases of real insolvency, would obviously be attended with much delay and embarrassment. All this is obviated by this act of 1852, allowing the trustees to declare the fact of insolvency, and, in effect, immediately to dissolve the corporation. Upon this being done, the affairs of the corporation are to be immediately wound up, the creditors paid as far as the assets will go, and the stockholders' liability then to be resorted to, to make up the deficiency.
Without this act, the corporation could not be dissolved adinvitum, in favor of creditors, till its property and assets were all disposed of. It could not be held to be dissolved until its property was exhausted. The provisions of this act of 1852 expedite the dissolution, the closing up of the affairs of the *Page 226 
corporation, and give the remedy against the stockholders, before given in equity.
I cannot see, therefore, how this act, in any essential particular, affects the remedy injuriously to the creditor; but if it does affect such remedy, it clearly does not go beyond the scope or degree of such variation of it, as is clearly within the rules of allowable alterations of State laws, as the same is stated by Judge TANEY, in the quotation from his opinion inRemsen v. Kinzie, above given, and also as asserted in thePlanters' Bank v. Sharp (6 How. U.S., 330), and in Crawford
v. The Branch Bank (7 id., 282). The act of April 16, 1852, I consider, therefore, entirely constitutional and valid.
We come then to the second point or proposition: Were these resolutions of the 27th April, 1852, purporting to be passed by the trustees of the Wool Growers' Manufacturing Company, duly and lawfully passed by said trustees so as to bind and dissolve the corporation?
The first inquiry upon this point is, to determine precisely the facts upon which it depends. The referee, in his report, states that the "trustees named in said complaint were the sole and only trustees then in office, and that on the said 27th day April, 1852, the said company was duly dissolved by the said trustees then in office, in the manner in that behalf, stated and set forth in said complaint, under and in conformity to the act of the legislature therein mentioned, and passed April 16, 1852."
In the complaint to which reference is thus had by the referee, it is stated, "that the following named persons, to wit: James Monroe, Arphaxad Loomis, Martin W. Priest, John Beardslee, Joseph Hinds, Warren Herkimer, Henry Lewis and Friend Cook, were the sole and only trustees of the said The Wool Growers' and Manufacturing Company, at the time of the dissolution thereof by the said trustees, on the 27th day of April, 1852, as hereinafter stated, and the said plaintiff, upon information and belief, further shows that the said trustees, afterwards, to wit: at a regular meeting held by them at the office of the said company, in the village of Little *Page 227 
Falls, within the county of Herkimer, on the 27th day of April, 1852, they, then and there, all being present at said meeting, unanimously adopted and passed a resolution by which they declared that they had become satisfied that the property and convertible assets of the said corporation, over and above its capital stock, was insufficient to pay its just debts, and that the business for which it was incorporated could not be longer carried on without loss to the stockholders or creditors, under and pursuant to the act entitled, `An act to facilitate the dissolution of manufacturing corporations in the county of Herkimer, to secure the payment of their debts without preference, passed April 16, 1852;' and thereupon the said corporation, according to the terms of the provisions of the said act, became dissolved."
This part of the complaint, the referee, in substance and effect, finds and reports to be true. This is a distinct and explicit finding upon the facts that all the trustees were present at a regular meeting held by them at the office of the company, on the said 27th day of April, 1852; and then and there, at said meeting, all being present, unanimously adopted and passed the resolution dissolving the corporation.
Upon this finding upon the facts, the resolution was clearly properly passed, and no question of doubt or dispute in respect to it is left open. If it was passed at a regular meeting when all the trustees were present, and passed unanimously, all question in respect to the validity of the resolution, so far as the trustees could give it force and validity, is settled and foreclosed.
The judgment rendered by the referee was reversed by the Supreme Court at general term, upon the law alone. This court is therefore confined, upon this appeal, also to a review of the case upon the law; as it is not stated in the judgment, as required in article 272 of the Code, to allow us to review the judgment upon the facts, that the same was reversed on questions of fact. The referee's report upon the facts upon this point was probably made upon the assumption that, all the trustees being notified to attend the meeting, must be *Page 228 
deemed to be present, and the resolution might be considered as passed unanimously, inasmuch as no dissent or objection appeared.
If we are at liberty to review the facts of the case, I think we might hold upon the evidence that the meeting was so held, after due notice to all the trustees to attend.
Such a meeting, I think, would be clearly a lawful meeting of the trustees, under section 6 of title 3, part 1, of 2 Revised Statutes (5th ed., 597), which is as follows: "When the corporate powers of any corporation are directed by its charter to be exercised by any particular body or number of persons, a majority of such body or persons, if it be not otherwise provided in the charter, shall be a sufficient number to form a board for the transaction of business; and every decision of a majority of the persons duly assembled as a board shall be valid as a corporate act."
This statute prescribes the rule for the conduct of the proceedings of all corporations, and must govern the action of the trustees of the Wool Growers' Manufacturing Company, under the statute in question.
The statute allows the corporation to dissolve itself in a particular manner. It did not confer special powers upon the trustees, of a judicial or private character. It was general in its language, and applied to the trustees of all manufacturing companies in Herkimer county. It was not, I think, such a special delegation of power to the trustees as individuals as to bring them within the provisions of section 29, of chap. 8, part 5, title 17, of the Revised Statutes (vol. 3, 5th ed., 869), which declares that "when any power or authority is duly confided by law to three or more persons, or when three or more persons or officers are authorized or required by law to perform any act, such act may be done, and such power or authority, or duty may be exercised and performed by a majority of such persons and officers upon a meeting of all of the persons or officers, so entrusted or empowered, unless special provision is otherwise made." *Page 229 
This provision obviously does not apply to corporations. It never has been held that, to make valid the acts of corporate bodies, all the trustees, directors or corporations entitled to vote in determining its action, must meet to authorize the corporation to do a valid act. Chief Justice EYRE, in Grindly
v. Barker (1 Bos. Pul., 236), states the rule, as I think it is now generally received, as follows: "The cases of corporations go further, and then it is not necessary that the whole shouldmeet; it is enough if notice be given, and a majority or a lesser number, according as the charter may be, may meet, and when they have met, they become just as competent to decide as if the whole board met." If therefore all the trustees are notified to meet, as is proved by the witness Bruce, and might have been specially found by the referee, I think the meeting of the trustees on the 27th of April a lawful meeting, entitled to act under the statute in question, and that their acts are valid.
But if there be any doubt on this point, it seems to me that the plaintiff is precluded from objecting in this suit to the action of the trustees at that time. A clear majority of the trustees was, in fact, present, and acted. No one, either trustee or stockholder, at that time or afterwards, before the commencement of this suit, dissented from the resolution then passed. The corporation was, in fact, clearly and palpably insolvent. That fact had been virtually declared in a resolution by the trustees passed March 22, previously, when the resolution was passed, closing the transfer book and directing the agent of the corporation to close up its business, sell off the stock and goods on hand, and negotiate for a sale of the mills and machinery of the corporation, and directing that a copy of such resolution be immediately served on all the stockholders and the principal creditors.
It was proved that a printed copy of these resolutions were, immediately after their passage, sent to all the stockholders. Such stockholders were therefore fully advised of the condition of the corporation and were all prepared for the resolution passed on the 27th of April, afterwards for the dissolution of said corporation. These resolutions could not have been a *Page 230 
surprise upon any of the stockholders. It is proved that they too were immediately served upon all the stockholders and published in a newspaper at Little Falls, where this corporation did its business.
The resolutions were acquiesced in and the corporation dissolved in fact, according to the rule applicable to this class of corporation, as declared in Slee v. Bloom, and Penniman
v. Briggs (supra), its business was stopped, its property disposed of, and its affairs closed up. Judgments were recovered against it and executions issued and returned unsatisfied, and a suit in equity commenced against the trustees to close up its concerns and enforce the statute liability of its stockholders, and, finally, with the sanction and direction of the Supreme Court, this suit was instituted for that purpose in the month of September afterwards.
During this period it does not appear that any of the trustees or stockholders dissented from the action of the trustees of the 27th of April. No one took any steps to arrest or intercept the dissolution of said corporation or claimed or asserted or could claim that it was not utterly insolvent and unable to continue the business which it organized, and such resolutions entirely proper.
Under such circumstances even if the resolutions of the 27th of April was irregularly passed, and at a meeting not duly called or held under the charter, I think the stockholders must be deemed to have assented to such resolution, and should be estopped from questioning their validity in this suit. They were certainly passed by an actual majority of the trustees, and if any question at the time had been made in respect to their regularity or propriety, the same could have been immediately repassed at a valid meeting.
I think the same rule should be applied in such case to the acts of trustees of a corporation who are but agents of the stockholders which would apply to the acts of any other class of agents acting for their principals and in their business. If such agents exceed their powers their principals must act promptly to disaffirm the act upon being informed of it, or *Page 231 
they will be deemed to affirm and adopt the same. This is a sound and proper rule, and should be applied in this case as against these defendants and all other of the stockholders of this corporation.
Another point made by the counsel for the respondent is, that the receiver's right to sue the stockholders accrues under the statute after the trustees have closed the business of the corporation and disposed of its property, and that this must occur before the stockholders can be "assessed for deficiencies." This objection, I think, is untenable, for the reason that it distinctly appears from the complaint and the referee's report, that the whole amount of the stockholders' liability will be required to pay the debts, and will be insufficient for that purpose. No assessment can be necessary when the whole amount of the liability of the solvent stockholder will be entirely inadequate to pay the debts, as is quite apparent upon the complaint and report of the referee.
Independently of these views, which relate chiefly to the arguments addressed to us on the hearing, I should be prepared to reverse the judgment of the court below and affirm the judgment of the referee upon another distinct ground. I cannot see why the order appointing the plaintiff receiver did not vest him with ample authority to enforce the stockholders' liability under the statute. Such liability is clearly a fund in equity for the payment of the debts of the corporation. The receiver was appointed in a suit instituted by creditors, and in behalf of all the creditors of the corporation. He was expressly authorized, by the order of the Supreme Court, made in such suit, to commence an action against each and all of the stockholders of said corporation who are solvent for the recovery of such a contributory sum from each solvent stockholder, not exceeding the whole amount of the stock owned by them, as will be necessary to satisfy any deficiency that might exist in payment of the debts of the said corporation.
I do not see why this order was not entirely within the authority and jurisdiction of the Supreme Court as a court of equity, *Page 232 
as an original equity power at common law. The appoint ment of a receiver was the only appropriate mode to reach and collect this equitable fund, the personal statute liability of the stockholders, for distribution among the creditors. The remedy of the creditors was in equity before the passage of the act of 1852, when there was a deficiency, and I have no doubt the court possessed ample power to give to them full and appropriate relief, in the mode adopted in this action, through the instrumentality of a receiver. I think the plaintiff, therefore, fully entitled to institute and maintain this action, and that the judgment of the court below should be reversed and that of the special term affirmed, with costs.
SELDEN and ALLEN, Js., took no part in the decision; all the other judges concurring,
Judgment reversed.