---

(26 Misc. Rep. 663.)

### PERSONS et al. v. GARDNER et al.

(Supreme Court, Special Term, Erie County. March 21, 1899.)

1. INSOLVENT BANKS—SUIT AGAINST STOCKHOLDERS—RECEIVERS.

Laws 1897, c. 441, amending Banking Law, § 52 (Laws 1892, c. 689), by providing that actions to enforce the liability of stockholders of insolvent banks shall be brought in the name of a receiver, where the bank has been dissolved and a receiver appointed, applies to banks in liquidation at the time of its adoption.

2. SAME—DUE PROCESS OF LAW.

Since Laws 1892, c. 689, § 52, making bank stockholders individually liable for the debts of the bank to the extent of the par value of the stock, merely gave the creditors of an insolvent bank the right to one suit against all stockholders by one creditor for the benefit of himself and all other creditors, Laws 1897, c. 441, amending said section 52, by providing that a suit against the stockholders of an insolvent bank shall be prosecuted only in the name of the receiver of such bank, is not, as against the stockholders, void, as depriving the creditors of their property without due process of law, or as impairing the obligation of existing contracts.

3. PLEADING.

In a complaint to enforce the liability of stockholders of an insolvent bank, an allegation that defendants were stockholders within two years before the commencement of the action, there being no allegation that they transferred their stock, sufficiently shows them to be stockholders, where the objection is by demurrer; since, for the purpose of the demurrer, it will be presumed that they remained stockholders until the dissolution.

4. SAME—TIME FOR COMMENCEMENT OF ACTION.

Where the assets of an insolvent bank are insufficient to pay its debts, suit may be commenced for the enforcement of the stockholders' liability before the amount of the deficiency has been definitely ascertained by the conversion of the assets into cash.

5. PLEADING—DEMURRER—CAPACITY TO SUE.

Where a demurrer, because of failure to state facts sufficient to constitute a cause of action, presents all the questions, a demurrer for want of legal capacity to sue is unnecessary.

Action by Henry H. Persons and another, as receivers of the Bank of Commerce in Buffalo, against William H. Gardner and others. Heard on demurrers to the complaint. Overruled.

Norris Morey, for plaintiffs.

John G. Milburn, for defendants Clarke and Rogers, as executors, and Hollister and Masten.

Seward A. Simons and Maulsby Kimball, for defendant Reed.

Roland Crangle, for defendant Saxton.

LAUGHLIN, J.　On the 3d day of December, 1896, the Bank of Commerce, a domestic banking corporation, was duly dissolved by a final judgment of this court in an action brought by the attorney general in the name of the people.　The same judgment appointed the plaintiffs permanent receivers.　The assets of the bank are insufficient to pay its liabilities, and this action is brought to enforce the statutory liability of the stockholders.　The defendants Hollister and Saxton separately demur to the complaint, on the grounds that plaintiffs have not a legal capacity to sue, and that it does not state facts sufficient to constitute a cause of action.　The defendants Clarke and Rogers, as executors and trustees under the will of Christina Cameron Masten, and Joseph Griffiths Masten, demur on the same grounds.　The defendant Reed demurs on the last ground only.

It is sought by these demurrers to challenge the constitutionality of the retroactive provision of chapter 441 of the Laws of 1897, authorizing receivers to bring such suits, which amended section 52 of the banking law, and took effect on May 17th of that year.　The section, as thus amended, reads as follows:

"Sec. 52. *Individual Liability of Stockholders.* Except as prescribed in the stock corporation law, the stockholders of every such corporation shall be individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such corporation, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares. In case any such corporation shall have been or shall be dissolved by final order or judgment of a court having jurisdiction, and a permanent receiver or receivers of the said corporation shall have been or shall be appointed, all actions or proceedings to enforce the liability of stockholders under this section shall be taken and prosecuted only in the name and in behalf of such receiver or receivers, unless receiver or receivers shall refuse to take such action or proceeding upon proper request in that behalf made by any creditor, and in that event such action or proceeding may be taken by any creditor of the corporation. The term 'stockholder' when used in this chapter shall apply not only to such persons as appear by the books of the corporation to be stockholders, but also to every owner of stock, legal or equitable, although the same may be on such books in the name of another person, but not to a person who may hold the stock as collateral for security for the payment of a debt."

The amendment inserted the second sentence, the other provisions remaining the same as they were originally enacted in 1892.　From the time the corporation was dissolved down to the enactment of this amendment, the right of action to enforce the liability of stockholders was vested in the creditors, and the receiver could not have maintained a suit.　Hirshfeld v. Fitzgerald, 157 N. Y. 185, 51 N. E. 997.　Although it is not alleged in the complaint, the fact was conceded upon the argument, that no creditor has instituted a suit to enforce the liability of the stockholders, and the constitutionality of the amendment is not questioned by the creditors.　All creditors have apparently and presumably tacitly acquiesced in the bringing of this suit by the receiver, and the statute of limitations would now be a bar to any action brought by them.　The defendants contend that, the cause of action having once vested in the creditors, it was not competent for the legislature, by general law, to provide for the enforcement of the liability by the receiver.　It is claimed that this was an attempt to take the property of the creditors without due process

of law, or that it impaired the obligation of existing contract rights. It will be observed that the amendment does not purport to deprive the creditors of the ownership of their claims. It recognizes their rights to the fund to be collected by the receiver. It deprives the creditors of the right to sue, and authorizes an officer of the court to represent them in enforcing the liability of the stockholders. It was not contended upon the argument that the liability of the stockholders has been enlarged by the amendment, but the suggestion is contained in one of the briefs submitted that the receivers would be entitled to fees on the collections from stockholders, and in that manner the liability of the latter would be increased. That question is not necessarily presented now. It may arise on the accounting in determining the amount of the deficiency for which the stockholders will be liable. It can then be determined whether that is a question between the creditors and receivers only, and whether the legislature intended to impose liability for such fees upon the stockholders, and, if that intention be manifest, the question would then arise whether, to that extent, the law would be constitutional. It becomes necessary, therefore, to consider what were the respective rights of the creditors and stockholders prior to the enactment of the law of 1897.

It was well settled that no creditor had an independent, individual cause of action against one or all of the stockholders. It was held to be the special province of a court of equity to enjoin actions at law, although this deprived the parties of a jury trial, and to permit only one suit by one creditor, for the benefit of himself and all other creditors, against all of the stockholders. The liability of the stockholders was not to individual creditors directly, but for contribution to a fund, out of which all creditors would be paid alike. In re Empire City Bank, 18 N. Y. 199; Sands v. Kimbark, 27 N. Y. 152; Hirshfeld v. Bopp, 145 N. Y. 84, 39 N. E. 817; Same v. Fitzgerald, supra; Pfohl v. Simpson, 50 How. Prac. 343–349; Story v. Furman, 25 N. Y. 224; Corning v. McCullough, 1 N. Y. 47; Terry v. Little, 101 U. S. 216. From the time this liability of stockholders of banks to its creditors was first imposed, by section 7 of article 8 of the constitution of 1846, down to the enactment of the banking law in 1892, the laws regulating the enforcement of such liability (chapter 229, Laws 1849, and chapter 409, Laws 1882) provided for the bringing of such actions by the receivers, and did not authorize an action by the creditors. The provision authorizing receivers to enforce the liability was evidently omitted from the banking law of 1892 through an oversight. The statutory revision commissioners, who drafted the banking law, had previously recommended to the legislature a proposed receivers' law, which conferred such authority on receivers, but this was not enacted. Hirshfeld's Case, 145 N. Y. 92, 39 N. E. 817; Report Com'rs St. Rev. 1890, vol. 1, pp. 1299, 1316, 1324. The banking law of 1892 did not, in express terms, provide that the creditors might maintain the action, nor does the constitution (article 8, § 7). There being, however, no express provision authorizing receivers to sue, it was held, as has been seen, that the claims of creditors for contribution by the stockholders were not assets which passed to the receivers, and that the suit should be brought by the creditor.

It has been decided, in a case where a corporation was insolvent, but was not so declared until 10 days after the enactment of the law, that the legislature might constitutionally pass a special act providing that the liability of stockholders to creditors, which attached under the manufacturing law of 1811, on dissolution of the corporation, should be enforced by trustees. The constitutional questions here presented were strenuously urged there against the power of the legislature to transfer the right to maintain the action to trustees or receivers, and thereby preclude the creditors from proceeding individually. The court reached the conclusion that the remedy of the creditors was not injuriously affected, and that, if so affected, the degree of variation of remedy was not such as to overstep the boundaries of constitutional limitation. Bank v. Furman, 17 Barb. 116; Walker v. Craine, Id. 124–131; Story v. Furman, 25 N. Y. 214; Cuykendall v. Corning, 88 N. Y. 135.

In the case of People v. Tweed, 5 Hun, 382, it was held that an act of the legislature (chapter 49, Laws 1875), which authorized the people to maintain an action to recover moneys belonging to the city of New York and unlawfully converted or appropriated, was constitutional. The question was there raised by the persons against whom the liability was sought to be enforced, as in this case. The city was made a party defendant and it did not question the constitutionality of the law. The court decided the case upon both questions, holding that the city alone could question the constitutionality of the act, and that, since the city acquiesced, the other defendants could not question the right of the legislature to authorize the people to bring the action; and also that the act created a remedy for the benefit of the city, and did not deprive the city of its rights or property; that it was a modification of a legal remedy, which did not prejudice or extinguish any personal or property rights of the city; and that it was constitutional and valid.

In Com. v. Cochituate Bank, 3 Allen, 42, the supreme court of Massachusetts sustained the validity of a law enacted after the dissolution of a banking corporation, which transferred to the receivers the right to enforce the liability of the stockholders, which right, down to that time, was vested in the creditors. In that case the court say:

"It will at once be perceived that no objection to a change of remedy can be successfully urged on account of its being more speedy and effectual. That objection might be urged as to all changes in the form of proceedings, or the organization of the legal tribunals to act thereon. Every statute extending the equity powers of this court would be obnoxious to objections of this character. The objection, to be tenable, must go beyond this, and show that the statute increased the actual liabilities of the stockholders, and was something more than a change in the mode of enforcing a pre-existing liability."

With the exception that the suit is brought in the names of the receivers, the remedy is according to the course of justice, as always administered in this state. The statute of 1897 merely restores the appropriate remedy which existed prior to 1892. It was not seriously contended upon the argument that the language of the amendment of 1897 could be given full force and effect without declaring it retroactive. In some of the briefs submitted, however, it is contended that

such effect should be given to the law. I am of opinion that the legislative intent is clear that this act should apply to banks then in a state of liquidation. It is sufficient here to hold that this legislation is constitutional and valid, at least as against the stockholders.

The only allegation of the complaint with reference to the defendants being stockholders is that they were stockholders within two years before the commencement of this action, and it is contended that this allegation is insufficient. The fact is distinctly alleged that they were stockholders, and, since they could not become stockholders after the dissolution of the bank, it is to be inferred that they were stockholders at the time of dissolution, or at some prior time, and within two years of the commencement of the action. There is no allegation that they transferred their stock, and I think it may, for the purposes of the demurrers, be presumed that they continued such stockholders down to the time of dissolution. Castner v. Duryea, 16 App. Div. 249, 44 N. Y. Supp. 708. The allegations of the complaint on that subject are informal and indefinite, but, as was held in Marie v. Garrison, 83 N. Y. 23, "it is not sufficient that the facts are imperfectly or informally averred, or that the pleading lacks definiteness and precision, or that the material facts are only argumentatively averred," to justify sustaining a demurrer. All of the demurrers present the objection that it appears on the face of the complaint that it fails to state facts sufficient to constitute a cause of action. That clearly presents all of the questions, and it was not necessary to demur on the ground that the plaintiffs have not a legal capacity to sue. Ward v. Petrie, 157 N. Y. 301, 51 N. E. 1002.

The complaint shows that the assets are insufficient to pay the debts for which the stockholders are liable. These facts authorize the commencement of the action, without waiting until all of the assets shall have been converted into money, and the amount of the deficiency thus definitely ascertained. The statute of limitations would ordinarily run before that time, unless the assets should be sacrificed by a forced sale, which might be prejudicial to both the stockholders and creditors. The court, after determining who are the stockholders against whom the liability may be enforced, will, in awarding final judgment, protect the stockholders against paying in more than may appear to be reasonably necessary to meet the deficiency for which they are liable, and then, should there be a surplus, they will be entitled to its return pro rata. In re Reciprocity Bank, 17 How. Prac. 323, 22 N. Y. 9; In re Hollister Bank, 23 N. Y. 508; Walton v. Coe, 110 N. Y. 109, 17 N. E. 676; Hirshfeld v. Bopp, supra.

The demurrers are overruled, with leave to the demurring defendants to answer within 20 days on payment of the costs of the demurrers.