60b 272
39ap152

JOHN M. HURD and others, Trustees, &c. *vs.* JANE TALL-MAN and others, Executrix and Executors, &c.

When trustees of a manufacturing corporation, under the act of the legislature, of April 16, 1852, " to facilitate the dissolution of manufacturing corporations in the county of Herkimer," &c., (*Laws of* 1852, *ch.* 361,) or the act of April 12, 1853, making the former act applicable to similar corporations in Cayuga county, (*Laws of* 1853, *ch.* 179,) shall have proceeded to declare the company insolvent, and to make an assessment upon the stockholders as for a deficiency, objections to the mode in which the trustees have made the assessment, and to the considerations which they took into view, and upon which they acted in determining the amount necessary to be assessed, being questions as to whether or not they erred in their determination as to the proper amount of the assessment, cannot arise in an action by the trustees to recover the amount of an assessment.

If the assessors had jurisdiction to proceed and make the assessment, errors committed by them in neglecting to assess on some stock, in assessing stock not liable to assessment, and in determining the amount of the assessment, should be corrected by an application to the court, under the statute, which provides that the trustees shall be under the direction and control of the Supreme Court, on their own application or that of any creditor.

Stockholders claiming to have been unjustly assessed, although not expressly named as applicants in whose behalf the trustees may be directed or controlled by the Supreme Court, are probably embraced within the equity of this provision, as the general intention of the act seems to be to convert the trustees into *quasi* receivers in equity, and to subject them to the general control and direction of the Supreme Court. *Per* TALCOTT, J.

Where the trustees of a corporation have attempted to make an assessment upon the stockholders without having first disposed, or attempted to dispose, of the property of the company, or to collect its debts, this is an objection which goes to the jurisdiction of the trustees to make the assessment at all.

Where the trustees are acting without any direction of the court, but merely under the powers expressly conferred by the act, they must defer any assessment upon stockholders till such time as they have complied with the provisions of the act in regard to disposing of the property and collecting the liabilities, that it may be seen whether any, and if any, what assessment is " necessary."

The liability of stockholders, to the company, for unpaid shares of stock, is a part of the fund applicable to the payment of the creditors, and should be collected by the trustees.

APPEAL from a judgment entered upon the report of a referee.

The " J. M. Hurd Paper Bag Co." was formed in No-

Hurd *v.* Tallman.

vember 1865, at the city of Auburn, for manufacturing purposes, under the act of 1848, with a capital stock of $200,0C0 divided into 200 shares of $1000 each. $140,000 of this stock was issued, and $100,000 of which had been paid in, leaving $40,000 of stock sold, which has not been paid for. The plaintiffs are the alleged trustees of said company.

On the 10th of December, 1869, at the written request of four out of the six trustees, a special meeting of the trustees was held, and resolutions passed, dissolving the corporation, for the reasons and by the authority stated in said resolutions. The referee found that at the time of said dissolution, the total liabilities of the company amounted to $55,483.19, and the good assets and cash of the company was $3125.72, leaving a deficiency of $52,257.49. This estimate leaves out entirely the indebtedness of $40,000, due to the company for unpaid stocks, and no effort was ever made to collect a dollar of it. Upon this state of facts, the trustees resolved to assess, and did assess, the stockholders, on the entire $140,000 of stock, irrespectively of whether it had been paid for, or not, 60 per cent, which would raise the sum, (if collected,) of $84,000, with which to pay an indebtedness of $52,257.49, and while the company had $40,000 due them. The defendant's testator, John Tallman, was the owner, by transfer, of two shares of the unpaid stock, and the assessment on those shares was $1200. This suit was brought against his executors, to recover that assessment, with interest.

The referee decided, as matter of law, that the defendants were liable for the full amount of the assessment, with interest and costs, and judgment was rendered accordingly, and the defendants appealed therefrom.

No offer was made to refer the claim, under the statutes, and no motion ever made, or order of the court, allowing costs.

The grounds given by the plaintiffs for assessing and attempting to collect from the stockholders $84,000, to pay $52,000 debts with, as set forth in the complaint, in the evidence of Leonard, and in the referee's report, were, that they considered and adjudged, "that some of the stockholders refused to pay, claiming they were not assessable." And some were insolvent, and would be unable to pay, "and so they made the assessment 60 per cent"—large enough—expecting to realize enough to pay the debts out of those who were solvent. This was the basis; and this, the referee held, was legal and proper.

*H. V. Howland*, for the appellants.

I. The complaint does not allege, nor does the proof anywhere show, that this company, "being insolvent, or in contemplation of insolvency," had made no preferences among its creditors. This was a jurisdictional fact, necessary to be alleged and proved, to give the trustees the right to dissolve this company, or make any assessment whatever. (*Laws of* 1852, *ch.* 361. *Laws of* 1853, *ch.* 179.)

II. This action cannot be maintained in the name of the plaintiffs, as "trustees of the J. M. Hurd Paper Bag Company." The action should have been brought in the name of the corporation. Upon the dissolution of the company, its trustees ceased to be trustees of the corporation, but, thereupon, became "trustees for the creditors," &c. (*Laws of* 1852, *p.* 573, § 3. *Eaton* v. *Alger*, 57 *Barb.* 179.)

III. The undisputed facts show, and the referee finds, that at the very time of this dissolution and assessment, $40,000 debts were due the company for unpaid stock, and no effort was made to collect any portion of it. The statute made it the duty of the trustees "to proceed with diligence to close up the business, dispose of the property, collect all debts and liabilities," and assess deficiencies, if necessary, &c., upon the stockholders, to the extent of

their liability. (*Laws of* 1852, *p.* 573, § 3.) There could be no deficiency ascertained, nor necessity for an assessment, until all debts and liabilities were collected. And the language of the act clearly means to make it the duty of trustees to collect debts before assessing. It was said the stock of John Tallman was not paid up, and the defendants are liable to pay for that also. This is not true; but if it were, it makes no difference in this case. This action is brought to recover the assessment, not the debt for the price of stock. And the recovery of this assessment does not prevent another action for the price of the stock, against the real original purchaser of it.

It distinctly appears in this case, that if the debts due the company had been collected, the assessment upon the stockholders would have been for only about $12,000, instead of $84,000. Consequently, this case does not come within the reasoning of the court in *Story* v. *Furman,* (25 *N. Y.* 231,) where it was held that as it appeared that the full amount of the defendant's liability to be assessed, in addition to the debts and assets of the company, would be required to pay the debts of the company, it could make no difference whether the receiver proceeded to make his assessment before collecting in debts, or not. But that is not this case. Here the contrary appears. Again, in that very case, at page 225, the court says, upon the dissolution, " the affairs of the corporation are to be immediately wound up; the creditors paid, as far as the assets will go, and the stockholders' liability then to be resorted to, to make up the deficiency." The stockholders are only liable for deficiency; not for the whole debts of the company.

IV. But the great error on the part of the referee, and the great wrong by the plaintiffs, is the basis and manner of making the assessment and the amount they undertake to collect of solvent stockholders—a sum sufficient to pay the whole amount of the debts of the company. They

had no authority to adjudge or decide who were solvent and who were not; and certainly they had no power to exempt those they considered insolvent from paying their assessment; nor had they any power to assess or collect $84,000 out of stockholders, to pay $52,000 debts with. In any aspect, it was a gross usurpation of a power they did not possess. The statutes, giving to them all the powers they have, strictly require them to " assess the deficiency, if necessary, to the extent of their liability, and collect the same." Not to assess stockholders to the extent of their ability to pay, as they have here, or to assess to nearly twice the extent of their liability, as in this case. It is submitted the trustees had no power to make the assessment they did in this case, against the defendants' shares, and the same is void.

The court will not fail to see the real object the trustees had in view, in thus making this assessment. It will be seen that Hurd, Boyce and McDougall, three of these very trustees, who were the owners of the largest portion of the entire stock, were the pretended insolvents, and the very men who were to be relieved of their debts or liabilities entirely, by compelling others they chose to designate as solvent, to pay them. But it is submitted the trustees had no power to make the assessment on the basis they did, and it is void. (*Laws of* 1852, *ch.* 361, § 3.) The debts for this $40,000 unpaid stock, upon the dissolution, at once became the property of the creditors of the company, in equal ratio, by the express provisions of the act, (*Laws of* 1852, *ch.* 361, § 1,) and which these plaintiffs were bound to collect, before resorting to the assessment of stockholders; this having been done, there could have been no such deficiency as is now claimed. The two shares owned by the deceased were not originally owned by him. He had purchased and paid for the same, but the person selling to him had not paid the company for it. Yet he, not being an original purchaser of the stock from

Hurd *v.* Tallman.

the company, could not be made liable to them for its purchase price, so that the testator did not owe the company anything for this stock. And hence the finding of the referee that the debts are more than the $40,000 unpaid stock, does not help the plaintiffs—the defendants not being liable to the plaintiffs for any part of that $40,000. The case shows John Tallman was not an original purchaser of this stock from the company. The stock was transferred to him, May 6, 1868. It does not appear, in the case, who was the original purchaser of this stock. But in order to recover for the purchase price of the stock, the plaintiffs would be called upon to show that; and there is nothing in the case to make the defendants liable for that amount; neither is it in controversy in this case. It is not mentioned who may be the debtor to the company for the stock. It certainly would be the person who originally subscribed for it, or received the original scrip, and not the transferee. Therefore, the findings of the referee "that the liabilities of the company were more than the $40,000 of capital stock," does not render the defendants' liability any the greater, legally or morally, for they owe no part of that sum to the company.

Again, the defendants were not liable for this assessment, for the reason that large amounts of the liabilities or debts, to pay which the assessment was made, accrued before John Tallman owned his stock. It is admitted that amounts aggregating $1631.08 of said debts accrued before May 6, 1868. This rendered the assessment void, as against these defendants—they not being liable for such debts. The transfer of the stock to John Tallman, May 6th, 1868, did not operate as a transfer of the liabilities of the company against him. (*Tracy* v. *Yates*, 18 *Barb.* 152.) There was very much more of the indebtedness shown, that accrued prior to May 1868; but the case fails to show it, except the above, which is all-sufficient for our purpose. There are numerous exceptions

taken to evidence, and rulings upon the trial, appearing in this case, which we do not mean to waive, by not making special points on them. Yet it seems there is too much error lying at the foundation of the proceedings in this case, and too outrageous a wrong, attempted by these plaintiffs against this dead man's estate, to require a resort to mere technical errors, to reverse this judgment.

*James Lyon,* for the respondents.

I. The plaintiffs were the legal trustees of the corporation at the time of the dissolution, and, as such, were authorized to act as provided in chapter 361, laws of 1852, and chapter 179, laws of 1853. The annual meeting of stockholders, for election of trustees, was held December 6, 1869, when the plaintiffs were elected trustees. This election having been held one day prior to the time provided by the by-laws of the corporation, the plaintiffs made proof (under objection) by which it appears that in 1867, at the annual election for trustees, John M. Hurd, Morris M. Olmsted, Charles Bemis, W. Boyce, William E. Hughitt and Clinton D. McDougall were duly elected trustees. No election was held for trustees in 1868. Vacancies occurred in the board of trustees in the case of Olmsted, Hughitt and Bemis, by the sale of their stock, and the trustees filled these vacancies at one of their meetings, by vote, appointing Leonard, Lanehart and Stupp, so that the trustees regularly elected in 1867, and appointed to fill vacancies, continued to act as. such until the present time. The trustees in office prior to and at the time of the annual election for trustees in 1869 were the same parties elected at the irregular election in 1869. So that in any aspect of the case the plaintiffs are the regular trustees of the corporation. The right of these plaintiffs to act in their capacity of trustees cannot be inquired into in this action. (*Trustees of Vernon &c.* v. *Hills,* 6 *Cowen,* 23. *Jackson* v. *Nestles,* 3 *John.* 133. *People* v. *Runkle,* 9 *id.* 159.)

Hurd v. Tallman.

Even if the election or appointment of any of them was irregular, yet the corporation assenting thereto, and permitting them to act in their capacity as such trustees, their acts are binding upon it. (*Ang. & Ames on Corp.* §§ 287, 288. *Partridge* v. *Badger*, 25 *Barb.* 146.) These trustees are annual officers, and continue in office until others are elected and qualified to fill their places. (1 *Strange*, 625. 3 *Humphrey*, 522. 6 *Conn.* 428. 6 *Cowen*, 23.) The stockholders have not dissented from the action of these trustees, or tried to remove them from office, and their acquiescence must be held to be a ratification of the acts of the trustees. (*See Story* v. *Furman*, 25 *N. Y.* 230.) Besides, the referee allowed an amendment to the complaint: "That the plaintiffs were the acting trustees," &c., and evidence was received to prove such fact. No objection made to the amendment or evidence.

II. The exceptions taken to the evidence of the insolvency of McDougall, are not well taken. The complaint alleges, "that many of the stockholders were and are insolvent, and utterly unable to meet or pay any assessment for such deficiency," and that the plaintiffs took insolvency into consideration in determining the amount of the assessment necessary to meet the deficiency. The answer denies these allegations. There was no objection raised to the form of these questions. The grounds of the objection are the incompetency of the evidence. The allegation in the complaint was deemed necessary and material, in view of the fact that the rate per cent upon the stock, assessed by the trustees, was higher than was apparently necessary; and the defendants have also deemed it material, and have denied it, and taken issue thereon. There is sufficient evidence in the case, without objection, and prior to that objected to, to sustain the referee's finding upon this question. The duty of the trustees in determining the amount necessary to assess upon the stockholders, is judicial. The power to assess deficiencies implies the

power to determine the amount of such deficiencies. And the right to assess is provided by the statute. (*Laws of 1852, ch.* 361.) The statute provides for assessing "deficiencies." This contemplates more than one assessment, if found necessary. The trustees determined the necessity for an assessment, and determined how high the rate should be to pay the deficiency. This duty, from its nature, is judicial. The court, in the case of *Pruyn* v. *Allen*, (39 *Barb.* 358,) in speaking of an assessment made in the case of an insolvent bank, says : " I do not perceive any restriction upon the power of the court to make the assessment sufficiently large, provided it be rateable, to cover in its anticipated pecuniary results, beyond all reasonable contingency, the entire deficit of indebtedness." The referee finds that J. M. Hurd, C. W. Boyce and C. D. McDougall were and are insolvent, and that they hold 102 shares of stock. This leaves but thirty-eight shares of stock in the hands of solvent stockholders from whom any assessment could be collected or enforced. From the actual condition of the assets, and the insolvency of some of the stockholders, no assessment was required; each solvent stockholder was liable to the full amount of his stock. In the case of *Story* v. *Furman*, (25 *N. Y.* 231,) which was a case under chapter 361, laws of 1852, the court says : " No assessment can be necessary when the whole amount of the liability of the solvent stockholder will be entirely inadequate to pay the debts, as is quite apparent upon the complaint and report of the referee." Besides, there is another answer to these objections. The plaintiffs are made " trustees for the creditors to the extent of the debts, and for the stockholders for any surplus." It is made the duty of the trustees " to pay over any surplus there may be after paying "the debts." (*Laws of 1852, ch.* 361, § 3.) So that if the amount realized from the assessment should be more than will be required to pay the debts, there is a remedy provided for the dis-

Hurd *v.* Tallman.

position of the surplus. The powers vested in these plaintiffs, as such trustees, are more ample than those possessed by receivers under the provisions of the Revised Statutes, entitled, " Of the voluntary dissolution of corporations." (2 *R. S.* 488, *Edm. ed. Walker* v. *Crain*, 17 *Barb.* 119.)

III. The only exceptions taken upon the trial are those discussed in first and second points. It is not deemed necessary to discuss the exceptions taken to the finding of facts in the referee's report. We think they are fully sustained by the evidence. No motion was made at the close of the plaintiffs' evidence, either for a nonsuit or a dismissal of the complaint. The case was fairly submitted to the referee upon the evidence. It is to be assumed that the evidence was sufficient for the referee to act upon, and to warrant his findings, inasmuch as the defendants have acted upon that view of the case. Every intendment is to be made in support of the referee's findings of fact; especially in this case, where there is no defense upon the merits.

IV. It may be claimed upon the argument of this appeal, that no allegation is made in the complaint that the corporation, being insolvent, or in contemplation of insolvency, have made no preferences among its creditors. The proviso in chapter 179, laws of 1853, section 1, is for the benefit of creditors. The stockholders are not in a condition to come into court and avail themselves of this proviso in the statute, while permitting the officers of the corporation to dissolve it, and to proceed to wind up its business and affairs. They have permitted their officers to bring about a condition of affairs by which the corporation ceases to exist, yet silently acquiesce in it until they are required to comply with the provisions of the law for assessing deficiencies to pay the debts of the corporation. It is to be assumed, for the purpose of this suit, that no preferences were made among its creditors. Neither stockholders nor creditors have taken any steps to arrest

or intercept the dissolution of the corporation, and have acted upon the assumption that no preferences were made. Upon the trial of this action, the plaintiffs presented full and fair schedules of their assets and liabilities, showing the condition of the affairs of the corporation at the time of its dissolution, the parties to whom it was indebted, and the character of such indebtedness. No question was raised by the defendants as to the truthfulness of these schedules; both parties acted upon the theory that this satisfied the requirements of the statute, and the trial proceeded upon the assumption of that fact, and the referee so found the fact. If there is any force in the question presented in this point, the court should allow an amendment to the complaint, to conform it to the facts proved and assumed upon the trial, and found by the referee. There is another answer to this question, should it be raised; that is, the proviso in the statute is matter of defense, (if available for any purpose on this trial.) And the defendants so treated it, for they have alleged as an affirmative defense that the plaintiffs have made preferences, &c., yet have made no proof under these allegations. We submit, that the defendants failing to raise this objection on the trial, should be estopped from raising it for the first time on this appeal. If the objection had been made on the trial, the court can see how readily the plaintiffs might have obviated it and supplied more positive evidence upon that part of the case. An objection like this should not be entertained when not raised in the court below. (*Carter* v. *Hunt,* 40 *Barb.* 89. *Cheney* v. *Beals,* 47 *id.* 523.) Even if the question presented in this point should be considered a jurisdictional one, the defendants not objecting to the proceedings, but participating therein, will be deemed to have waived it. (*Baldwin* v. *Calkins,* 10 *Wend.* 170. *Paige* v. *Fazackerly,* 36 *Barb.* 392. 16 *N. Y.* 263. 34 *Barb.* 66.)

V. The plaintiffs are trustees of an express trust, and as

such are authorized to sue, without joining with them the corporation for whose benefit the action is prosecuted. (*Code*, § 113.) It is provided by chapter 361 of the laws of 1852, section 3, that the trustees may " use the corporate name of the company in actions and otherwise, to enforce and collect debts and liabilities for the benefit of creditors and stockholders." This remedy is merely cumulative, and does not negative the right of these trustees to sue in the courts as trustees of an express trust, under section 113 of the Code. The statute does not provide how they shall sue stockholders. The defendants were bound to take this objection by demurrer or answer, and having failed to do so, have waived the defect. (*Mosselman* v. *Caen*, 34 *Barb.* 66.)

*By the Court*, TALCOTT, J. This action is brought to enforce the personal liability of a stockholder in a manufacturing company, located in the county of Cayuga, to the creditors of the company, upon an alleged insufficiency of the assets of the company to pay its debts. And it is to collect an assessment which has been made by the trustees of the company, ("The J. M. Hurd Paper Bag Company,") assuming to proceed under chapter 361 of the laws of 1852, entitled " An act to facilitate the dissolution of manufacturing corporations in the county of Herkimer, and to secure the payment of their debts without preference," and which, by chapter 179 of the laws of 1853, is made applicable to manufacturing corporations in Cayuga county. By the act in question the trustees of the corporation are empowered, under certain circumstances, to declare the corporation insolvent, and the act declares that thereupon "the corporation shall become dissolved, and all the property and rights of action of the corporation *including any liability of stockholders*, for unpaid stock, or' for the corporation debts, shall thenceforth be deemed the property of the creditors, to the extent of their debts, in

equal ratio, according to their debts respectively." (*Laws of* 1852, *p.* 572, § 1.) The act declares (§ 3) that "upon such dissolution, the trustees then in office shall become trustees for the creditors to the extent of the debts, and for the stockholders for any surplus, and shall proceed with all reasonable diligence to close the business, dispose of the property, collect all debts and liabilities, assess deficiencies, if necessary, upon the stockholders to the extent of their liability, and collect the same," &c.

In this case the trustees have proceeded to declare the company insolvent, and to make an assessment upon the stockholders as for a deficiency. And they have assessed upon the stock held by the testator of the defendants, the amount of $1200, to recover which this action is brought. Various objections are taken to the mode in which the trustees have made the assessment, and to the considerations which they took into view, and upon which they acted in determining the amount necessary to be assessed, such as the anticipated circumstance that some of the assessments would not be collected, &c. These are mostly questions as to whether or not the trustees erred in their determination as to the proper amount of the assessment. Such questions cannot, we think, arise in an action to recover the amount of the assessment.

If the assessors had jurisdiction to proceed and make the assessment, the alleged errors committed by them in neglecting to assess on some stock, in assessing stock not liable to assessment, and in determining the amount of the assessment, should be corrected by an application to the court, under the act, which provides that they shall be under the direction and control of the Supreme Court, on their own application, or that of any creditor. The stockholders claiming to have been unjustly assessed, although not expressly named as applicants in whose behalf the trustees may be directed or controlled by the Supreme Court, are probably embraced within the equity

of this provision, as the general intention of the act seems to be to convert the trustees into *quasi* receivers in equity, and subject them to the general control and direction of the Supreme Court.

Without, however, expressing any conclusive opinion as to certain of the objections which have been made to the assessment, we think there is one which goes to the jurisdiction of the trustees to make the assessment at all; and that is, that they have attempted to make this assessment without having first disposed, or attempted to dispose, of the property of the company, or to collect its debts.    The act is not explicit on this subject; but from its provisions it is manifest that the assets of the corporation are intended to be made the primary fund for the payment of its debts. It enjoins upon the trustees the duty of disposing of the property and collecting all the debts and liabilities of the company, and of assessing deficiencies, if necessary, upon the stockholders, to the extent of their liability.    Whether an assessment is necessary, and to what amount, cannot be certainly known until something more has been done than appears to have been done by the trustees in this case.

It would seem there are $40,000 of liability to the company for unpaid stock, besides other assets and property. This liability is a part of the fund applicable to the payment of the creditors, and which should be collected by the trustees.    In making their assessment, they undertook to determine how much of this was likely to be collected, and did determine that a part of this liability, owing by some of the trustees themselves, was uncollectable.    Such a proceeding at the mere option of the trustees, is liable to great abuse, and may operate oppressively.    It would seem to have been the intention of the framers of the act to regulate their assessments much after the same manner as the act of 1849 regulates the assessment to be made upon the stockholders of insolvent banks.    Upon that act, under

language which would seem to authorize the receiver to proceed against the stockholders before exhausting the assets, more clearly than the act now under construction, it was held by the Court of Appeals that he could not do so except by order of the court. The reasoning of the Court of Appeals upon the construction of the act of 1849, in this particular, is quite applicable to the act now under consideration. (*Matter of the Reciprocity Bank,* 22 *N. Y.* 9.)

But we are not without more direct authority upon this subject. In the case of *Walker* v. *Crain*, (17 *Barb.* 119,) where the construction of the Herkimer act of 1862 was under discussion, Justice Gridley, delivering the opinion of the court, holds the following language : " The direction to assess deficiencies occurs precisely in the order of time when it should, if the construction we have adopted be the true one. By the previous clauses of the third section, the trustees are directed to collect all debts and liabilities due to the corporation, and to dispose of its property and close the business. This should be done before the stockholders are required to advance anything upon this personal liability requirement, and they should be required to pay upon it no more than may be necessary to satisfy the debts due to the creditors of the company."

In *Story* v. *Furman*, (25 *N. Y.* 214,) the constitutionality of the Herkimer act was objected to, as the opinion of the court states the objection, because the statutory trustee is first directed to resort to another fund as the primary fund for the collection of the demand, and to suspend the collection from the stockholder until the primary fund is exhausted. The court assumes this to be the true construction of the act, and proceeds to show that no right conferred by the act of 1811 was impaired by this provision of the act of 1852.

The case of *Story* v. *Furman*, (*supra*,) is relied upon by the counsel for the respondent in this case as an authority for the making of an assessment by the trustees at their

Hurd *v.* Tallman.

own discretion, and without converting the assets. We do not understand it to be an authority for that position. In that case there was no assessment at all, and the action was by a receiver appointed in a suit in behalf of all the creditors of the corporation, and the action was brought under an order of the court, and in a case where it was entirely clear that the whole amount of the liability of the solvent stockholders, including all the assets, would be entirely inadequate to pay the debts. In such a case, or where, for good reasons to be shown, certain of the assets were in such a condition as not to be immediately convertible, as in the cases arising under the act of 1849, doubtless the court, under the power given by the act, to direct and control the trustees, might direct an assessment before all the assets had been absolutely converted. But where the trustees are acting without any direction of the court, but merely under the powers expressly conferred by the act, we think they must defer any assessment upon stockholders till such time as they have complied with the provisions of the act in regard to disposing of the property and collecting the liabilities, that it may be seen whether any, and if any, what assessment is necessary.

The judgment must be reversed, and a new trial ordered, costs to abide the event.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 4, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]