19 577
39ap152

MARTIN S. CUYKENDALL, as Receiver, etc., of the late DODGE AND · STEVENSON MANUFACTURING COMPANY, Plaintiff, *v.* AMOS DOUGLAS, Defendant.

*Manufacturing corporation — chapter 40 of 1848, sections 20, 21 and 22 — increase of stock — what evidence of notice to stockholders held sufficient — certificate as to the increase of the stock — what is a sufficient acknowledgment of — Assessment on stockholders, on the insolvency of a corporation — when the stockholders are estopped from disputing their liability for its debts.*

Sections 20 and 21 of chapter 40 of 1848, authorize a corporation formed thereunder to increase its capital stock as therein prescribed, and provide for giving notice of the meeting, to be held for that purpose, to the stockholders. Section 22 provides that if a sufficient number of stockholders appear in person or by proxy, they shall organize by choosing one of the trustees chairman, and a suitable person for secretary ; that if a sufficient number of persons vote in favor of increasing the stock, a certificate stating certain facts prescribed in said section, "shall be made out, signed and verified by the affidavit of the chairman, and be countersigned by the secretary, and such certificate shall be acknowledged by the chairman and filed as required by the first section of this act."

On October 8, 1867, a certificate was filed showing that at·a meeting of the stock-holders of a manufacturing corporation, held to vote upon increasing the capital stock, John A. Dodge was elected chairman and Howard S. Stevenson secretary, and that more than two-thirds of the whole number of shares of capital stock voted·in favor of the increase. It was signed as follows:

"JOHN A. DODGE.

"Subscribed and sworn to before me, }
    this·8th day of October, 1867.        }
                "DANIEL A. ROBINSON, Jr ,
            "Justice of the Peace of Cayuga county.
"Countersigned — H. S. STEVENSON,
                "Secretary."

It appeared that Dodge had been named as one of the trustees in the articles of association filed in March, 1866, and had acted as such at a meeting of the trustees on September 11, 1867.

In an action·by the receiver of the company to enforce an assessment upon stock held by the defendant, in which the defendant challenged the validity of the increase of the stock directed at such meeting, *held*, that it sufficiently appeared that Dodge was a trustee of the corporation at the time of the meeting, and that he was qualified to act as chairman thereof.

That the certificate was sufficiently acknowledged to satisfy the requirements of the statute in that respect.

That in the absence of evidence that due and sufficient notice of the meeting was not given to the stockholders, the books of minutes of the company and the certificate showing that more than two-thirds of the stockholders appeared in person or by proxy, and voted for the increase of the stock established, as against the defendant, that the stock was increased at a regularly assembled meeting of the stockholders.

*Semble*, that when upon the voluntary dissolution of a corporation, on the ground of its insolvency, the Supreme Court appoints a receiver and directs an assess-:ment upon the stockholders, such order, until modified or reversed on appeal, ·establishes conclusively as against the stockholders·that the debts, to the pay-ment of which the assessments·are to be·applied, are debts for which they are personally liable.

When at the time.of the dissolution of the. company and· the appointment of a receiver a.portion of the debts of the company are not yet due, it is not essential to the validity of an assessment upon the stockholders directed· by the court that judgments should first have been.recovered thereon against the company.

What is sufficient evidence to establish as against a stockholder his ownership of .shares in a corporation, considered.

MOTION for a new trial on a case and exceptions ordered to be heard in·the first instance at the General Term, after a.verdict in favor of the plaintiff directed at the circuit.

This action was tried at a circuit court in Cayuga county, and a verdict ordered for the plaintiff for $1,849.

The defendant asked the court to direct a verdict in his favor on several grounds. The court refused and the defendant excepted.

The action was brought to recover of the defendant, as a stockholder in the Dodge and Stevenson Manufacturing Corporation, of which the plaintiff was appointed receiver.

The company was organized in March, 1866, with a capital stock of $250,000, and had its principal place of business in Auburn, Cayuga county. The certificate of organization was filed in the Cayuga county clerk's office March 10, 1866. The defendant received a certificate September 19, 1866, for ten shares, and a certificate March 4, 1868, for five shares, and one dated June 17, 1868, for nine shares. The latter certificate stated, " capital increased to $500,000."

At a meeting of the board of trustees held September 11, 1867, it was unanimously resolved to increase the stock to $500,000 ; and notices were directed to be given and were given for a stockholders' meeting for October 4, 1867.

The book of minutes of the board of trustees was produced at the trial, and the following proceedings and resolutions read therefrom in evidence, against the objection and exception of the defendant, who insisted : " First. That it is not competent evidence to prove increase of capital stock. Third. That there is no provision of the statute providing for a record of a meeting of stockholders to increase stock, except the record be filed in the clerk's office, which is of no effect until it is shown to be filed there ; that the book is shown by evidence to be the book of minutes of meetings of the trustees, and not a book of minutes of meetings of the stockholders." The objections were overruled and the following resolutions read :

"AUBURN, N. Y., *September* 11, 1867.

"Board of trustees met. Present — J. A. Dodge, H. G. Tompkins, G. J. Letchworth, I. F. Terrill, J. A. Polhemus.

" First. It was unanimously resolved that the capital stock of the Dodge and Stevenson Manufacturing Company be increased to the sum of five hundred thousand dollars ($500,000).

" Second. That the president be authorized to issue the proper notices to the stockholders to carry out the first resolution. Adjourned.

"JOHN A. DODGE,

"*President.*"

"AUBURN, N. Y., *October* 4, 1867.

"At a meeting of the stockholders of the Dodge and Stevenson Manufacturing Company, held in their office, October 4, 1867, at two o'clock, John A. Dodge was appointed chairman, and H. S. Stevenson was appointed secretary. H. G. Tompkins and G. J. Letchworth were appointed tellers. Moved by I. F. Terrill, and seconded by R. A. Nelson, that the stockholders proceed to vote upon the resolution to increase the capital stock of the Dodge and Stevenson Manufacturing Company to ($500,000) five hundred thousand dollars. Carried. Poll opened at $2\frac{1}{2}$ o'clock. Moved by I. F. Terrill, and seconded by H. G. Tompkins, that the poll close at five o'clock. Carried. Moved by I. F. Terrill, and seconded by H. G. Tompkins, that the meeting adjourn, to meet again at $7\frac{1}{2}$ o'clock this evening. Carried."

On October 8, 1867, the following certificate was filed :

"At a meeting of the stockholders of the Dodge and Stevenson Manufacturing Company, held at their office, in the city of Auburn, N. Y., on the 4th day of October, 1869, at two o'clock P. M., for the purpose of voting upon the resolution of the trustees to increase the capital stock of said company to $500,000, John A. Dodge was elected chairman of the meeting and Howard S. Stevenson secretary.

"The stockholders present proceeded to vote in person and by proxy, and upon the closing of the poll, and counting the ballots, it appeared that more than two-thirds of the whole number of shares of said capital stock were voted in favor of the resolution to increase the capital stock of said company to $500,000. The debts and liabilities of said company are $235,967.56. The capital actually paid in is $250,000.

"JOHN A. DODGE.

"Subscribed and sworn to before me, }
    this 8th day of October, 1867. }

          "DANIEL A. ROBINSON, Jr.,
        "*Justice of the Peace of Cayuga county.*

"Countersigned—H. S. STEVENSON,
              "*Secretary.*

"[Indorsed.] Filed October 8, 1867."

Plaintiff's counsel then again offered to read in evidence from

said last-mentioned book the minutes of meetings of August 29 and 31, 1874. Defendant's counsel again objected on the same grounds he had taken on his objection thereto, when before offered to be read by plaintiff's counsel, and heretofore set forth. Said objection was overruled, and defendant in due time excepted, and said minutes were read in evidence, as follows:

"OFFICE OF THE DODGE AND STEVENSON MFG. CO.,
"*August* 29, 1874, A. M.

"In pursuance of the call of the president of this company, and due notice thereof to all its trustees, a meeting of the said trustees was held. Present — H. G. Tompkins, E. L. Thornton, G. J. Letchworth. Matters of special interest pertaining to the business were discussed, and on motion, the meeting adjourned to $4\frac{1}{2}$ o'clock P. M. this day."

"OFFICE OF THE DODGE AND STEVENSON MFG. CO.,
"$4\frac{1}{2}$ o'clock P. M., *August* 29, 1874.

"Board met pursuant to adjournment from this morning. Present — H. G. Tompkins, E. L. Thornton, G. J. Letchworth. Letter was read from Mr. Fowler from New York, saying he could not be home before Sunday morning. On motion meeting adjourned until ten o'clock Monday morning, August 31st."

"OFFICE OF THE DODGE AND STEVENSON MFG. CO.,
10 O'CLOCK, A. M., *August* 31st.
"1874.

"Board met pursuant to adjournment from Saturday, P. M. Present — Jno. S. Fowler, H. G. Tompkins, G. J. Letchworth. Minutes of regular meeting May twelfth, and special meeting June sixth received and adopted. The following resignation of E. L. Thornton was read, and on motion of Mr. Fowler accepted."

"AUBURN, *August* 29, 1874.
5 O'CLOCK, P. M.

"*To the Members of the Board of Trustees Dodge and Stevenson Mfg. Co.:*

"DEAR SIRS. — I hereby tender my resignation as trustee of your company, having parted with all my stock.

"Yours respectfully,
"E. L. THORNTON."

The president reported that he had become satisfied that, even after the most careful and economical management, the present year's business will show a net loss to the company. The treasurer reported that the receipts from the business are entirely inadequate to the payment of the company's bills payable, and that a large amount of paper now lies under protest, upon some of which actions have already been commenced, and others threatened to be commenced.

After a thorough discussion and examination of the present and future prospects of the business, and with due regard to the best interests of all parties interested in this company, the following resolutions were presented by Mr. Fowler, who moved their adoption.

"Resolved, That we, the trustees of the Dodge and Stevenson Manufacturing Company, have become satisfied that the property and convertible assets of the said corporation, over and above its capital stock, are insufficient to pay its just debts, and that the business for which it was incorporated cannot be longer carried without loss to the stockholders or creditors."

"Resolved, That pursuant to the provisions of chapter 361 of the Laws of 1852, and chapter 179 of the Laws of 1853, of the State of New York, the said Dodge and Stevenson Manufacturing Company is hereby dissolved and ceases to exist.

"Resolved, That a copy of these resolutions be served upon or sent by mail to all the creditors and stockholders, and a copy thereof to be published in the Auburn Daily Advertiser.

"The ayes and noes were called for, with the following result: J. S. Fowler, aye; H. G. Tompkins, aye; G. J. Letchworth, aye. The president therefore declared the resolutions adopted unanimously. On motion the board then adjourned at 12 o'clock M."

On the 15th day of June, 1876, upon due application, the accounts of the trustees were passed, and the plaintiff was duly appointed a receiver of said company, and the trustees were removed by an order of the Supreme Court.

The receiver gave his bond and duly qualified. On the 21st of July, 1876, the receiver made a report to the court that there were subscriptions to the stock unpaid, and asked for directions as to whether an assessment should be made.

On that day the Special Term granted an order, viz., that an assessment be made and is hereby directed upon the stockholders of the late Dodge and Stevenson Manufacturing Company, and those liable for the debts thereof, of and to the " amount of seventy-five per cent of the amount of stock held by them respectively ; that the said receiver make and proceed to collect the same with all reasonable dispatch."

The receiver on the 22d of July, 1876, made such an assessment, and assessed the defendant $1,800.

It appeared the capital had not all been paid in, and the liability of the stockholders, it was claimed, existed under sections 10 and 11 of the act of 1848.

The question as to the affinity of the judge appointing the receiver was considered at a former term of this court, and the opinion of the court by MULLEN, J., is reported in 14 Hun, 440 ; the order then made was subsequently reversed by the Court of Appeals.

*W. F. Cogswell*, for the plaintiff.

*Richard C. Steel*, for the defendant.

HARDIN, J. :

The learned counsel for the defendant insists " that the verdict should not have been for more than seventy-five per centum of $1,500 and interest."

In October, 1867, a vote was taken at a stockholders meeting upon the resolutions for increasing the capital stock from $250,000 to $500,000. The certificate filed with the clerk shows that more than two-thirds of the whole number of shares of the capital stock voted in favor of the resolution.

There was no proof given to the contrary upon the trial. The 20th section of the act of 1848 (chap. 40), relating to the formation of corporations for manufacturing purposes, provides that " any company which may be formed under this act may increase or diminish its capital stock by complying with the provisions of this act."

Section 21 provides for a meeting of the stockholders, for the purpose of availing of the provisions of the act. It declares

that " when any company shall desire to call a meeting of the stockholders " for such purpose, " it shall be the duty of the trustees to publish a notice, signed by at least a majority of them, in a newspaper in the county, * * * at least three successive weeks," and to deposit a notice in the postoffice, addressed to each stockholder.

This is a duty imposed upon the trustees for the purpose of assembling the stockholders. The certificate which was filed was signed and sworn to by John A. Dodge, and it appears by the certificate of incorporation, made March 10, 1866, that he was named as a trustee to manage the concerns of the company. There was no proof that he was removed or displaced, and the minutes of board of trustees show him acting at a meeting September 11, 1867, as such trustee, and it, therefore, sufficiently appears that when he was elected chairman of the stockholders' meeting, he was eligible as the chairman of the meeting, and answered the requirements of section twenty-second in that regard, and there is no force in the objection made to the certificate filed in October, 1867, in that regard. The certificate was " verified by the affidavit of the chairman," and " it was countersigned by the secretary " of the stockholders' meeting. It was filed in the clerk's office.

The statute says : "And such a certificate shall be acknowledged by the chairman."

The certificate was produced from the clerk's office. At the end of it and to the left of the signature of John A. Dodge were these words, " *subscribed* and sworn to before me, this 8th day of October, 1867, Daniel A. Robinson, Jr., justice of the peace of Cayuga county."

The force of the objection is aimed at the use of the word " subscribed " instead of the word " acknowledged."

We fail to see that there is any force in substance in the objection, of which the defendant can avail himself successfully. The object of the statute was to provide a mode of proof of the instrument, to establish its genuine character, and as the signature was in presence of the justice and he had witnessed and certified it, we do not see why the object of the statute was not answered.

A certificate of acknowledgment is only required to be in "substantial compliance" with the statute. (*Thurman* v. *Cameron*, 24 Wend., 87; *West Point Iron Company* v. *Reymert*, 45 N. Y., 703; *Canandarqua Academy* v. *McKechnie*, *ante*, p. 63.)

There was some evidence given tending to show that notice of the stockholders' meeting was given to all of the stockholders. In the absence of any proof that due and sufficient notice was not given to all, we think the book of minutes and the certificate, showing that more than two-thirds of the stockholders appeared in person or by proxy, and voted for the increase of the stock, establish as against this defendant, that the stock was increased from $250,000 to $500,000, at a regularly assembled meeting of stockholders.

September 9, 1868, a semi-annual dividend of five per cent was declared, and also a dividend of five per cent payable 20th of December, 1868, and one 20th February, 1869. There was proof of the payment of these dividends.

The defendant December 24, 1868, acknowledged the payment of $120 as a dividend, and he received and indorsed a check for dividend, which was given February 20, 1869, by Dodge, as president of the company. February 7, 1868, the defendant wrote to the president that he was negotiating for five shares of stock of the company issued to Loomis & Sands, and also for the three shares allotted on this "*original*" stock, and he asked for privilege of paying up the installment due on that stock February 1, 1868; and he received a letter from the company February 13, 1868, giving him the privilege of paying up the installment and having a receipt in full.

February 17, 1868, defendant sent to pay the last named balance a draft, and he asked for a certificate of the five shares of Loomis & Sand stock bought by him.. It was transferred to him February 8, 1868, in writing by the assignee of Loomis & Sands.

January 29, 1874, the defendant sent in a receipt to the company for a new certificate for twenty-four shares of stock of the company, and also acknowledged preferred stock.

March 15, 1872, in chapter 108 of the laws of that year, the Legislature authorized the company to issue preferred stock, if a *majority* of the stockholders should assent thereto.

On January 5, 1874, the defendant executed three several instruments covering twenty-four shares of stock, in each of which instruments occur substantially these words, viz. : "For considerations mentioned in chapter 108 in the Laws of 1872, an act amending the same, and the assent and subscriptions made thereunder, the undersigned hereby transfers and surrenders and delivers up to the trustees of Dodge and Stevenson Manufacturing Company to be canceled, the within scrip and shares of capital therein mentioned, being nine shares in number, dated "Franklin, N. Y., January 5, 1874, Amos Douglass." Proceedings in respect to the preferred stock were had, and stated to defendant, and he was asked by letter to send in his scrip as held by him, and to execute a surrender of it in the words given above. He sent in his three certificates covering twenty-four shares of stock, with a surrender attached to each certificate in the words given *supra.*

We think the defendant was the owner of twenty-four shares of the stock of the company at the time it went into liquidation, and at the time the receiver made the assessment, and that he was properly held liable to be assessed upon the twenty-four shares of the stock. The recovery was for seventy-five per cent on twenty-four shares, of $1,800, and forty-nine dollars interest thereon.

Besides, the twenty-second section of the act provides, that when the certificate of the stockholders' meeting is filed, "the capital stock of such corporation *shall be increased* or diminished to the amount specified in such certificate." It also provides the company shall be entitled to the privileges and provisions of this act.

The defendant as a stockholder was part of the company, and as he, in common with the company, had the benefit for a time of such "privilege and provisions," it is just and proper that he should take the burdens and be subjected "to the liabilities of the act." (Act of 1848, chap. 40, § 22.)

Again, it appears that there was a stock book kept by the company, and an account thereon of defendant's stock, and the receiver testified that he found the defendant's name thereon.

The exact contents of the book do not seem to be in the case, as made up before us, though the evidence shows the defendant's name thereon. But in the absence of any proof by the defendant that he did not appear by the book to be owner of twenty-

four shares, we think, with the evidence before us already alluded to, that we should be justified in presuming that the twenty-four shares of defendant's stock were entered upon the stock ledger which was open to inspection to "stockholders and creditors of the company." (Act of 1848, chap. 40, § 25.) That statute declares "such book shall be presumptive evidence of the facts therein stated *in favor of the plaintiff*, in any suit or proceeding against such company, *or against any one or more stockholders.*" (Section 25.)

If that book was presented to the court when the assessment was made, and the amount of assessment required there determined upon from a consideration of the debts, liabilities and the number of shares held by the various stockholders, and the court found from the *prima facie* evidence in such *proceedings* that the defendant was a stockholder of twenty-four shares, and directed an assessment of seventy-five per cent thereupon, why should he not be included?

However this view may be, we think the defendant was clearly liable to be assessed for twenty-four shares, *and not for fifteen only.*

We come now to consider the motion made by the defendant, to dismiss the complaint based upon a supposed failure "to prove that any of the debts of the company were to be paid within one year from the time it was contracted."

We might with propriety adopt the reasoning of TALCOTT, J., in *Hurd* v. *Tallman* (60 Barb., 272), and conclude that the action of the Supreme Court in appointing a receiver, and directing an assessment upon the stockholders of the company, was conclusive upon the stockholder in this action against him.

If the order was irregularly made or prematurely made, the remedy was by an application to change the order, or by an appeal therefrom. (*In re Reciprocity Bank*, 22 N. Y., 9; *Hurd* v. *Tallman*, 60 Barb., 286; *Whittlesey* v. *Franz*, 74 N. Y., 461.)

But we think there is a further answer to the position taken by the defendant. It appears that, at the time of the dissolution, the company was in debt from $300,000 to $350,000, and that a large part of it was for debts not then matured. The dissolution was August 31, 1874. It then appears the company was insolvent,

and the trustees pursuant to the Herkimer county act (chapter 361 of Laws of 1852), which was by an act of 1853, chapter 179, made applicable to Cayuga county, provided no preferences shall have been made by the company, adopted a resolution dissolving the compay as they had a right to do. (*Story* v. *Furman*, 25 N. Y., 214, and cases there referred to, and *Hurd* v. *Tallman*, 60 Barb., 272.)

The report of the president made to that meeting of the trustees stated "that the (then) present year's business would show a net loss to the company." It appeared that as much as $100,000 of the debts were due.

It appeared that settlements were made every year with one George Harding, and that his debt was in bills payable, and that the settlement of the year the company went into liquidation was not paid. It appears that there were contingent liabilities upon indorsements or guaranties made by the company for about $10,475.72 upon "business paper owned by the company."

It also appeared that some of the claims against the company were for infringements of patents. The receiver was sworn and gave a general account of the debts, and it does not appear in his cross-examination or by any other evidence in the cause that the defendant's debts were not contracted, as in the usual course of business of such company, payable in less than one year from the creation of the indebtedness.

We think, therefore, it was fairly concluded by the trial judge that some, at least, if not all the debts, were payable within one year from the time of their contraction.

Nor was there any force in the learned counsel's argument that this action could not be maintained without showing that the creditors had obtained judgments against the company. It appeared that many of the debts were not matured in August, 1874, when the company was dissolved.' The dissolution of the company by the resolutions of August, 1874, under the act of 1852, put it out of the power of creditors to obtain judgments against the company, and had such judgments been obtained they would have been fruitless, as the creditors could not, by means thereof, upon executions or otherwise, seize the

funds in the hands of the trustees. (*Shellington* v. *Howland*, 53 N. Y., 375; *Kincade* v. *Dwinnell*, 59 id., 548; *Whittlesey* v. *Frantz*, 74 id., 460; *Huguenot Nat. Bank* v. *Studwell*, 74 id., 621.)

They held the funds as trustees for the creditors. They stood for the time they held the assets as statutory receivers, appointed in virtue of the sovereign power, and such trustees or receivers hold, by a tenure and for purposes as valid and effectual as do receivers appointed by this court, the funds of an insolvent corporation. (*Story, Receiver,* v. *Furman,* 25 N. Y., 220.)

The action by the receiver appointed by the Supreme Court, named as the successor of the statutory receivers or trustees, is to enforce in equity the liability of the stockholders, and a recovery by him as such is a bar to an action by a creditor. (*Walker* v. *Crain,* 17 Barb., 119; *Story as Receiver* v. *Furman,* 25 N. Y., 222.)

In *Pfohl* v. *Simpson et al.* the action was by a creditor of The Peoples' Safe Deposit and Savings Institutions to reach the liabilities of stockholders in equity, and I stayed actions brought by separate creditors against stockholders at law, and upheld the right of the creditor to enforce the stockholders' liability for the benefit of all the creditors, and it was also held that such relief was within the equity jurisdiction of the court. The judgment was sustained by this court and the Court of Appeals. (*Pfohl* v. *Simpson,* 74 N. Y., 137.)

We have considered above the only points raised in the argument before us, and we conclude thereon adversely to the defendant for the reason stated, and we must therefore direct judgment for the plaintiff, as receiver, upon the verdict, against the defendant, with costs.

TALCOTT, P. J., and SMITH, J., concurred.

New trial denied, and judgment ordered for plaintiff on the verdict.